1 | STEPHEN J. AKERLEY (S.B. #160757)
   | sakerley@omm.com
2 | ERIC AMDURSKY (S.B. #180288)
   | eamdursky@omm.com
3 | PETER T. SNOW (S.B. #222117)
   | psnow@omm.com
4 | O'MELVENY & MYERS LLP
   | 2765 Sand Hill Road
5 | Menlo Park, California 94025
   | Telephone: (415) 984-8700
6 | Facsimile: (415) 984-8701

7 | JILLIAN R. WEADER (S.B. #251311)
   | jweader@omm.com
8 | O'MELVENY & MYERS LLP
   | 2 Embarcadero Center, 28th Floor
9 | San Francisco, CA 94111
   | Telephone: (415) 984-8700
10 | Facsimile: (415) 984-8701

11 | Attorneys for Defendants
   | DEVICEVM, a Delaware corporation, and
12 | BENEDICT CHONG, an individual

13

**Filed**

OCT 1 1 2009

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

14 | **UNITED STATES DISTRICT COURT**

15 | **NORTHERN DISTRICT OF CALIFORNIA**

16 | **SAN JOSE DIVISION**

17 | **C09 04697**

18 | PHOENIX TECHNOLOGIES, LTD., a
   | Delaware corporation,
   |                                          Case No. 109cv147626
19 |
   |               Plaintiff,                 **NOTICE OF REMOVAL OF ACTION**
20 |                                          **UNDER 28 U.S.C. § 1441(b) (FEDERAL**
   |                                          **QUESTION)**
21 |        v.
   |
22 | DEVICEVM, a Delaware corporation, and
   | BENEDICT CHONG, an individual,
23 |
   |               Defendants.

24
25
26
27
28

NOTICE OF REMOVAL UNDER 28 U.S.C.
§ 1441(b) (FEDERAL QUESTION)

1  TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
2  DISTRICT OF CALIFORNIA:

3      1.      PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1441(b), defendants
4  DeviceVM, Inc. and Benedict Chong ("Defendants") hereby remove to this Court the state court
5  action described below, on the basis of this Court's original federal question jurisdiction under 28
6  U.S.C. § 1338(a).  This Court has jurisdiction over Plaintiff's action, because Plaintiff asserts
7  state law claims that necessarily depend on the resolution of a substantial question of federal
8  patent law.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988).

9                              **DESCRIPTION OF ACTION**

10     2.      On July 17, 2009, Plaintiff filed suit in the Superior Court of the State of
11 California in and for the County of Santa Clara, entitled *Phoenix Techs., Ltd. v. DeviceVM and*
12 *Benedict Chong*, case number 109-cv-147626.  A copy of the Complaint is attached as Exhibit A.
13 On August 31, 2009, prior to serving the Complaint on either Defendant, Plaintiff filed its First
14 Amended Complaint in the same court.  A copy of the First Amended Complaint is attached as
15 Exhibit B ("Am. Compl.").

16                           **SERVICE AND TIMELY REMOVAL**

17     3.      On September 2, 2009, Plaintiff personally served DeviceVM's agent for service
18 of process with a summons and the First Amended Complaint.  On September 3, 2009, Plaintiff
19 personally served Benedict Chong with a summons and the First Amended Complaint.

20     4.      Defendants' Notice of Removal is timely.  According to 28 U.S.C. § 1446(b),
21 notice of removal must be filed within 30 days of service of the complaint.  The thirty-day
22 timeframe commences the day after service. Fed. R. Civ. P. 6(a)(1).  In this case, the thirty-day
23 period commenced on September 3, 2009, and would end on October 2, 2009.  Defendants thus
24 filed this Notice of Removal within the allotted timeframe.

25                        **JURISDICTION AND BASIS FOR REMOVAL**

26     5.      As described below, this Court has original federal question jurisdiction over this
27 case under 28 U.S.C. § 1338(a), and Defendants may remove the case to this Court pursuant to
28 the provisions of 28 U.S.C. § 1441(b).      Three of Plaintiff's causes of action satisfy the

1   requirements of "arising under" the federal patent laws, and this Court has original jurisdiction

2   over those claims. *See, e.g., Christianson*, 486 U.S. at 809.

3   **I.    FEDERAL QUESTION JURISDICTION EXISTS OVER THREE OF**
     **PLAINTIFF'S STATE LAW CLAIMS**
4

5           6.      The general allegations in Plaintiff's First Amended Complaint allege that

6   "DeviceVM has included Phoenix Proprietary Information" in U.S. Patent No. 7,441,113 ("the

7   '113 Patent") and six DeviceVM patent Applications (U.S. Provisional Patent Application No.

8   60/890,121, International Patent Application No. PCT/US07/72778, and U.S. Patent Application

9   Nos. 12/184,374, 12/200,758, 12/239,701, and 11/772,700, (which issued as the '113 Patent)).

10  *See* Plaintiff's "Background Allegations," Am. Compl. ¶¶ 28-33. Plaintiff further alleges that its

11  proprietary information is contained in the '113 Patent owned by Device VM. Am. Compl. ¶ 34.

12  In addition, Plaintiff's specific counts contain allegations that the '113 Patent and other patent

13  applications embody proprietary information belonging to Plaintiff. *See, e.g.,* Am. Compl. ¶¶ 49,

14  50(a), 50(b), 50(c), 50(e), 53, 57, and 58. Plaintiff's First Amended Complaint clearly shows that

15  three of the state law claims in this action raise substantial questions of federal patent law.

16  **II.   STANDARD FOR REMOVAL BASED ON FEDERAL QUESTION**
     **JURISDICTION**
17

18          7.      Plaintiff's First Amended Complaint includes six counts for state law claims:

19  breach of contract, interference with contract, misappropriation, unfair business practices,

20  conversion, and constructive trust. This Court has subject matter jurisdiction over a state law

21  claim if Plaintiff's right to relief necessarily depends on resolution of a substantial question of

22  federal patent law. *Christianson*, 486 U.S. at 809. Even if just one claim raises such a substantial

23  federal question, this Court may exercise supplemental jurisdiction over any other state law

24  claims. 28 U.S.C. § 1367 (1990).

25          8.      "[W]hether a case 'arises under' patent law 'must be determined from what

26  necessarily appears in the plaintiff's statement of his own claim[.]'" *Holmes Group, Inc. v.*

27  *Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) (citations omitted). The elements of

28  the claims as stated by Plaintiff are determinative. *Christianson*, 486 U.S. at 809; *Franchise Tax*

2                       NOTICE OF REMOVAL UNDER 28 U.S.C.
                              § 1441(b) (FEDERAL QUESTION)

1   *Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983). Plaintiff need

2   not mention Defendants' patents in every count. "[T]he Court must consider as a whole the

3   substance of the claim in addition to the language of the complaint[.]" *Jim Arnold Corp. v.*

4   *Hydrotech Sys., Inc.*, 109 F.3d 1567, 1576 (Fed. Cir. 1997) (citations omitted). Here, Plaintiff's

5   general allegations show that Plaintiff's theory of recovery depends not only on the content of the

6   '113 Patent and the patent applications at issue but also will require Plaintiff to identify and prove

7   that Plaintiff's inventions were misappropriated. *See, e.g.,* Am. Compl. ¶¶ 31 and 40. These

8   claims necessarily require a determination of the true inventors of the technologies at issue, the

9   times of conception and reduction to practice of the alleged inventions, and the scope of both the

10   Plaintiff's and the Defendants' inventions.

11   **III.   PLAINTIFF'S CLAIM FOR UNFAIR BUSINESS PRACTICES RAISES A**
         **SUBSTANTIAL QUESTION OF FEDERAL PATENT LAW**

12

13       9.     Count Four of Plaintiff's First Amended Complaint (Unfair Business Practices)

14   states that Defendants have misled Plaintiff's customers and the public by representing that

15   DeviceVM's product (Splashtop) was "independently developed through [Defendants'] own

16   intellectual property." Am. Compl. ¶ 54. According to Plaintiff's general allegations, the

17   intellectual property at issue is contained in six DeviceVM patent Applications and the '113

18   Patent. Am. Compl. ¶¶ 28-33.

19       10.   This claim depends on Plaintiff being able to show misleading statements by

20   Defendants involving these patent applications and the issued '113 Patent. *Id.* For a patent

21   (which is presumed valid) or an application for a patent to form the basis for misleading

22   customers or the public about whether Defendants truly developed the technology, the patent

23   claims must be invalid or unenforceable. Determining validity or enforceability is a substantial

24   question of federal patent law. *Hunter Douglas, Inc. v. Harmonic Design, Inc.*, 153 F.3d 1318,

25   1329 (Fed. Cir. 1998), *overruled on other grounds by Midwest Indus., Inc. v. Karavan Trailers,*

26   *Inc.*, 175 F.3d 1356, 1359 (Fed. Cir. 1999). The Federal Circuit has held that, for purposes of 28

27   U.S.C. § 1338, validity and enforceability shall be treated the same as infringement, and,

28   according to the Federal Circuit, infringement is a question "substantial enough to satisfy the

1    jurisdictional test" of section 1338. *Hunter Douglas*, 153 F.3d at 1330. Because the Court will

2    have to determine the validity and enforceability of the '113 Patent and analyze the

3    representations Defendants made to the United States Patent and Trademark Office in the six

4    patent applications, Federal Circuit law indicates that Plaintiff's claim for unfair business

5    practices raises a substantial question of federal law. *Id.*

6       11.    In *Hunter Douglas*, 153 F.3d at 1329, the Federal Circuit held that a state law

7    claim for injurious falsehood belonged in federal court under 28 U.S.C. § 1338(a), because a

8    required element of the state law cause of action (the falsity) "necessarily depend[ed] on a

9    question of federal patent law, in that either certain claims of [the] patents [were] invalid or all of

10   the claims [were] unenforceable." The basis for falsity in the *Hunter Douglas* complaint was

11   falsity in procuring patent claims which the defendant knew or should have known were valid or

12   unenforceable. *Hunter Douglas*, 153 F.3d at 1322. Plaintiff makes the same allegations here:

13   that Defendants' claims that they own technologies embodied in the '113 Patent and certain other

14   patent applications are false and have misled Plaintiff's customers and the public. As in *Hunter*

15   *Douglas*, Plaintiff's claim requires deciding whether there was falsity in procuring patent claims,

16   thereby implicating a substantial question of federal patent law.

17      12.    The Federal Circuit addressed a similar state law claim for business disparagement

18   in *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476, 478 (Fed. Cir.

19   1993). The *Additive Controls* Court held that the business disparagement claim "require[d]

20   plaintiff to prove, as part of its prima facie case, the falsity of defendant's allegedly disparaging

21   statements." *Id.* To prove the falsity, plaintiff had to show that its product did not infringe

22   defendant's patent. *Id.* Therefore, plaintiff's right to relief depended upon resolution of a

23   substantial question of patent law. *Id.* In the present case, the misrepresentations alleged as

24   unfair business practices relate to allegedly fraudulent patent applications and an allegedly invalid

25   and wrongfully-obtained patent (the '113 Patent). As in *Additive Controls*, the Court here will

26   have to examine Defendants' patent claims and representations to the United States Patent and

27   Trademark Office and to the public and compare the patent claims to Plaintiff's alleged

28   proprietary and confidential information to determine whether Defendants' alleged statements

                                        4    NOTICE OF REMOVAL UNDER 28 U.S.C.
                                             § 1441(b) (FEDERAL QUESTION)

1    were misrepresentations. This comparison and the analysis of the alleged misrepresentations

2    raise a substantial question of federal patent law. *Id.* at 478; *U.S. Valves, Inc. v. Dray*, 212 F.3d

3    1368, 1372 (Fed. Cir. 2000).

4    13.    Precedent from the California Court of Appeal for the Sixth Appellate District

5    (where the Santa Clara Superior Court sits) is also in line with federal opinions indicating that this

6    case raises a substantial question of federal patent law. In *Holiday Matinee, Inc. v. Rambus, Inc.*,

7    118 Cal. App. 4th 1413, 1426 (2004), the Sixth District Court of Appeal held that Plaintiff's state

8    law unfair competition and unjust enrichment claims raised a substantial question of federal

9    patent law, where the plaintiff alleged that the defendant unfairly took advantage of wrongfully-

10   obtained patent rights by exacting royalties to which defendant was not entitled. In *Holiday*, the

11   Court held that each of the plaintiff's claims "required a showing that [defendant's] patents were

12   invalid and unenforceable[,]" and that "questions of patent validity and enforceability, like patent

13   infringement, are substantial issues of patent law that invoke exclusive federal jurisdiction under

14   section 1338(a)." *Id.* at 1426-27 (citing *Hunter Douglas*, 153 F.3d at 1330). Recently, in *Linear*

15   *Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 124 (2009), the California Court of

16   Appeal for the Sixth Appellate District held that no federal question arose in a contract dispute

17   over whether defendant had to indemnify plaintiff for damages owed for patent infringement. In

18   analyzing the issue, the *Linear* Court stated that "when the plaintiff in his opening pleading . . .

19   sets up a right under the patent laws as ground for a recovery," "the state courts have no

20   jurisdiction." *Id.* Here, Plaintiff's First Amended Complaint alleges that Plaintiff's proprietary

21   information is contained in an issued patent and six patent applications. Plaintiff's "grounds for

22   recovery" are Defendants' alleged misrepresentations regarding its patent applications and

23   Defendants' alleged violation of the patent laws, raising a substantial question of federal patent

24   law. *See id.*

25   14.    The case at hand is distinguishable from *Conroy v. Del Monte Produce, Inc.*, 325

26   F. Supp. 2d 1049, 1056 (N.D. Cal. 2004). In *Conroy*, the district court held that federal question

27   jurisdiction was lacking, because defendant's misrepresentations that a certain pineapple was

28   covered by a patent were independent of whether that patent was valid or not. *Id.* In the present

NOTICE OF REMOVAL UNDER 28 U.S.C.
§ 1441(b) (FEDERAL QUESTION)

1    case, Plaintiff's own language indicates that its theory of recovery is based on Defendants'

2    alleged use of proprietary information in prosecuting six patent applications, obtaining the '113

3    Patent, and presenting the '113 Patent as valid and enforceable, thereby deceiving Plaintiff's

4    customers and the public. *See* Compl. ¶¶ 16, 35, and 36. Unlike the claims in *Conroy*, Plaintiff's

5    allegations implicate a substantial question of patent law.

6

7

**IV.    PLAINTIFF'S CLAIM FOR CONVERSION RAISES A SUBSTANTIAL QUESTION OF FEDERAL PATENT LAW**

8        15.    Count Five of Plaintiff's First Amended Complaint (Conversion) states that

9    Plaintiff is the owner of proprietary information "found in certain DeviceVM Patent Applications

10   and/or the '113 Patent." Am. Compl. ¶ 57. According to Plaintiff, under Chong's inventions

11   assignment agreement with Plaintiff, Plaintiff is the exclusive owner of the information found in

12   DeviceVM's six patent applications and the '113 Patent. *Id.* Count Five also states that

13   Defendants "utilize[ed] the confidential and Proprietary Information and the inventions contained

14   therein to prosecute patent applications for DeviceVM[.]" *Id.* at ¶ 58. To determine whether

15   Defendants utilized confidential or proprietary information, the Court will have to compare the

16   alleged confidential and proprietary information to the claims of DeviceVM's six patent

17   applications and the '113 Patent. The Federal Circuit has held that the interpretation of patent

18   claims and comparisons of those claims to the technologies at issue provide a basis for federal

19   jurisdiction. *U.S. Valves,* 212 F.3d at 1372 (plaintiff "must show that [defendant] sold valves that

20   were covered by the licensed patents . . . . [A] court must interpret the patents and then determine

21   whether [defendant's] valve infringes these patents. Thus patent law is a necessary element" of

22   plaintiff's state law cause of action.). Here, DeviceVM's patent will necessarily have to be

23   construed to determine whether it claims or discloses any of Plaintiff's alleged proprietary

24   information. Claim construction is a task falling uniquely within the patent laws. Because the

25   presiding court will have to interpret patent claims and decide the scope of disclosure, patent law

26   is a necessary element of Plaintiff's claim for conversion.

27

28

NOTICE OF REMOVAL UNDER 28 U.S.C.
§ 1441(b) (FEDERAL QUESTION)

1

## V. PLAINTIFF'S CLAIM FOR CONSTRUCTIVE TRUST RAISES A SUBSTANTIAL QUESTION OF FEDERAL PATENT LAW

2

3   16.   Count Three of Plaintiff's First Amended Complaint (Constructive Trust[1]) seeks to

4   have the Court hold in a constructive trust "the inventions claimed and/or disclosed in the [six]

5   DeviceVM **Patent Applications**; the **'113 Patent**, all profits and royalties resulting from the

6   manufacture, sale, distribution, and marketing of each version of DeviceVM's products," and

7   "[a]ny United States or foreign **patents or patent applications** that claim priority to the

8   DeviceVM **Patent Applications**, the **'113 Patent**, and/or that are supported by the disclosures in

9   any DeviceVM **Patent Application** or the **'113 Patent**[.]" Am. Compl. ¶¶ 50(a), (b), (c), and (e)

10  (emphasis added). By its very terms, Plaintiff's First Amended Complaint seeks to have this

11  Court determine whether the claims of the '113 Patent and six patent applications cover

12  Plaintiff's alleged proprietary and confidential information and hold those patents in trust. *Id.*

13  Plaintiff's claim language is determinative. *See Holmes,* 535 U.S. at 830; *Christianson*, 486 U.S.

14  at 809. Plaintiff's First Amended Complaint shows that analyzing the substance of the claims of

15  the '113 Patent and other patent applications is necessary to the Court holding the '113 Patent and

16  the other applications in a constructive trust. Because patent law is central to deciding whether

17  the equitable remedy of constructive trust is appropriate, federal question jurisdiction exists. *See,*

18  *e.g., Hunter Douglas*, 153 F.3d at 1329-30.

19

## CONCLUSION

20  17.   Plaintiff's general allegations and specific causes of action show that Plaintiff's

21  theories of recovery for Conversion, Unfair Business Practices, and Constructive Trust raise a

22  substantial question of federal patent law that gives rise to federal question jurisdiction. Only one

23  claim must support federal question jurisdiction to provide a basis for removal. Because the '113

24  Patent and six patent applications by Defendants are integral to three of Plaintiff's claims, the

25  action is properly removed to federal court.

26

27  [1]   Though Plaintiff brings a cause of action for "constructive trust," a constructive trust is not an
independent cause of action but a type of equitable remedy. *Batt v. San Francisco*, 155 Cal. App.
28  4th 65, 82 (2007) (citations omitted).

1

2    Dated: October 1, 2009

3                                              STEPHEN J. AKERLEY
                                               ERIC J. AMDURSKY
                                               PETER T. SNOW
4                                              JILLIAN R. WEADER

5                                              O'MELVENY & MYERS LLP

6
                                               By: _Stem Akerley_____
7                                                   Stephen J. Akerley
                                                    Attorneys for Defendants
8                                                   DeviceVM, Inc. and Benedict Chong

9

10   SF1:777386.2

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8        NOTICE OF REMOVAL UNDER 28 U.S.C.
         § 1441(b) (FEDERAL QUESTION)

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
DEVICEVM, INC., a Delaware corporation, and BENEDICT CHONG, an individual



FILED

2009 JUL    P 12: 42

David H ~~~~~ ~~~~~ Court
By

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PHOENIX TECHNOLOGIES LTD., a Delaware corporation

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | CASE NUMBER:<br>*(Número de Caso)* 1 4 7 6 2 6 |
|---|---|

Superior Court of California, County of Santa Clara
191 North First Street, San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Karineh Khachatourian (SBN 202634)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
5 Palo Alto Square - 6th Floor, 3000 El Camino Real, Palo Alto, CA 94306-2155
Phone: (650) 251-7700

| DATE: July 17, 2009<br>*(Fecha)* | DAVID H. YAMASAKI<br>Chief Executive Officer Clerk | Clerk, by<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1.  ☒ as an individual defendant, Benedict Chong.
2.  ☐ as the person sued under the fictitious name of *(specify):*

3.  ☐ on behalf of *(specify):*
    under:  ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
            ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
            ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
            ☐ other *(specify):*

4.  ☐ by personal delivery on *(date):*

4668499v.1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
DEVICEVM, INC., a Delaware corporation, and BENEDICT CHONG, an individual

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PHOENIX TECHNOLOGIES LTD., a Delaware corporation



**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

FILED

2009 JUL 17 PM12:42

David H Yamasaki, Chief of the Superior Court
County of Santa Clara, California
By:_____
Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* | **CASE NUMBER:**<br>*(Número del Caso):* |
|---|---|
| Superior Court of California, County of Santa Clara<br>191 North First Street, San Jose, CA 95113 | 1 0 9 C V 1 4 7 6 2 6 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Karineh Khachatourian (SBN 202634)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
5 Palo Alto Square - 6th Floor, 3000 El Camino Real, Palo Alto, CA 94306-2155
Phone: (650) 251-7700

| DATE: July 17, 2009<br>*(Fecha)* | DAVID H. YAMASAKI<br>Chief Executive Officer, Clerk | Clerk, by<br>*(Secretario)* | _____, Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*



[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* DeviceVM, Inc.
   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

4668573v.1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|---|

1  KARINEH KHACHATOURIAN (SBN 202634)
   Email: kkhachatourian@mintz.com
2  BRYAN J. SINCLAIR (SBN 205885)
   Email: bsinclair@mintz.com
3  JEFFREY M. RATINOFF (SBN 197241)
   Email: jratinoff@mintz.com
4  MINTZ LEVIN COHN FERRIS GLOVSKY
   AND POPEO P.C.
5  5 Palo Alto Square - 6th Floor
   3000 El Camino Real
6  Palo Alto, CA 94306-2155
   Telephone: (650) 251-7700
7  Facsimile: (650) 251-7739

8  Attorneys for Plaintiffs
   PHOENIX TECHNOLOGIES LTD.
9

FILED  Santa Clara County
07/17/09  12:53pm
David H. Yamasaki
Chief Executive Officer
By: cfujihara DTSCIV010101
R#200900077146
CK                      $350.00
TL                      $350.00
Case: 1-09-CV-147626

10                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                          COUNTY OF SANTA CLARA
                                                   109CV147626
12                          (UNLIMITED CIVIL CASE)

13  PHOENIX TECHNOLOGIES LTD., a          Case No.
    Delaware corporation,
14                                        **COMPLAINT FOR (1) BREACH OF**
              Plaintiff,                  **CONTRACT, (2) INTERFERENCE WITH**
15      vs.                               **CONTRACT, (3) TRADE SECRET**
                                          **MISAPPROPRIATION, (4) UNFAIR**
16  DEVICEVM, a Delaware corporation, and **BUSINESS PRACTICES, 5)**
    BENEDICT CHONG, an individual,        **CONVERSION; AND (6)**
17                                        **CONSTRUCTIVE TRUST**
              Defendants.
18
                                          **JURY TRIAL DEMAND**
19

20

21

22

23

24

25

26

27

28

                                   COMPLAINT

1    Plaintiff Phoenix Technologies Ltd. ("Phoenix"), for its complaint against Defendants
2  DeviceVM, Inc. ("DeviceVM") and Benedict Chong ("Chong") (collectively, "Defendants"),
3  alleges as follows:

## THE PARTIES

5    1.    Phoenix Technologies Ltd. is a Delaware corporation with its principal place of
6  business in Milpitas, California.

7    2.    Founded in 1979, Phoenix designs, develops and supports system software and
8  related applications and services for personal computers ("PCs") and other computing devices.
9  Phoenix's products support and enable the compatibility, performance, connectivity, security and
10  management of the various components and technologies used in such devices. Phoenix established
11  industry leadership and effectively created the PC clone industry with its original BIOS product for
12  Compaq in 1983.

13    3.    Phoenix sells its products primarily to computer and component device
14  manufacturers. The company also provides training, consulting, maintenance and engineering
15  services to its customers.

16    4.    DeviceVM Inc. ("DeviceVM") is a Delaware corporation with its principal place of
17  business in San Jose, California. On information and belief, DeviceVM is a privately held software
18  company headquartered in Silicon Valley and with offices in Taiwan and China. On information
19  and belief, DeviceVM was founded in 2006 and is funded by various venture capital firms and
20  private investors based in China and the United States.

21    5.    On information and belief, DeviceVM markets, sells, distributes and offers for sale a
22  product named Splashtop®, which it alleges is an instant-on pre-boot environment, developed by
23  DeviceVM, that allows you to rapidly access the Web and key applications without the need to boot
24  your main operating system.

25    6.    Phoenix is informed and believes, and based thereon alleges that Chong, an
26  individual, works and resides in San Jose, California. Chong is a former Phoenix employee who,
27  Phoenix is informed and believes, and based thereon alleges, worked for and is still employed by
28  DeviceVM.

- 1 -

COMPLAINT

**BACKGROUND ALLEGATIONS**

7. Chong worked at Phoenix for eight years, from approximately November 1996 until November 2004. On information and belief, Chong began working for DeviceVM on or about June 2007.

8. In 1996, Phoenix hired Chong to play a significant role in Phoenix's engineering group responsible for Phoenix's development of core systems technology.

9. Since Chong had access to Phoenix's most sensitive information, on or about November 1996, Phoenix presented and Chong signed an Employee Inventions and Proprietary Information Agreement (the "Agreement") as a condition of his employment by Phoenix. A true and correct copy of the Agreement is attached hereto as Exhibit A, and is incorporated herein by reference.

10. The Agreement is valid and fully enforceable against Chong.

11. Pursuant to Paragraph 3 of the Agreement, Chong agreed that all Innovations that: (a) are not developed entirely on Employee's own time; (b) are developed using equipment, supplies, facilities, confidential and proprietary information or trade secrets of Phoenix; (c) result from work performed by Employee for Phoenix; or (d) relate at the time of conception or reduction to practice to the business or the actual or demonstrably anticipated research or development of Phoenix, will be the sole and exclusive property of Phoenix. Chong agreed to assign to Phoenix any rights that he may have in any such Innovations and in any associated patents, patent applications, copyrights, trade secret rights, mask work rights, rights of priority and other intellectual property rights.

12. Pursuant to Paragraph 4 of the Agreement, Chong agreed to assist Phoenix in every proper way to obtain for Phoenix and enforce patents, copyrights, mask work rights and other legal protections for Innovations belonging to Phoenix in any and all countries.

13. Pursuant to Paragraph 5 of the Agreement, Chong agreed to irrevocably transfer and assign to Phoenix, and forever waive and agree never to assert, any right to claim authorship or be identified as the author of any Innovation, to object to any modification of, or other action in relation to, any Innovation, or any similar right, existing under judicial or statutory law of any

- 2 -
COMPLAINT

1 | country in the world, or under any treaty.

2 | 14. Pursuant to Paragraph 6 of the Agreement, Chong acknowledged that his
3 | employment with Phoenix created a relationship of confidence and trust with respect to any
4 | information of a confidential and proprietary or secret nature that was disclosed to him by Phoenix,
5 | or that he learned in the course of employment by Phoenix and that related to the business, products,
6 | supplier, customers, research or development of Phoenix and its products. Such Proprietary
7 | Information includes but is not limited to Innovations, marketing plans, product plans, business
8 | strategies, financial information, forecasts, personnel information, customer lists and any other
9 | nonpublic technical or business information on that Employee knows or has reason to know
10 | Phoenix would like to treat as confidential for any purpose, such as product development,
11 | maintaining a competitive advantage, or avoiding undesirable publicity (hereinafter "Proprietary
12 | Information").

13 | 15. Pursuant to Paragraph 7 of the Agreement, Chong agreed at all times, both during
14 | and after his employment, to keep all such Proprietary Information in confidence and trust, and
15 | agreed to not use or disclose any such Proprietary Information without the written consent of
16 | Phoenix, except as may be necessary to perform his duties as an employee of Phoenix and for
17 | Phoenix's benefit.

18 | 16. On information and belief, Chong has disclosed Phoenix Proprietary Information to
19 | DeviceVM and DeviceVM has prosecuted patent applications containing inventions
20 | misappropriated from Phoenix through Chong (the "Patents").

21 | 17. On information and belief, based in part on the misappropriated Phoenix Proprietary
22 | Information, DeviceVM has misled Phoenix's potential customers and the public about the true
23 | nature of its business and the purported independent development of its Splashtop® product.

24 | 18. Phoenix only became aware of DeviceVM's and Chong's unlawful activities in June
25 | 2009.

26 | / / /
27 | / / /
28 | / / /

- 3 -
COMPLAINT

1

2

3

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

## (AGAINST CHONG)

4     19.    Phoenix incorporates by reference the above paragraphs as though set forth fully
5   herein.

6     20.    As a condition of his employment, Chong signed the Agreement with Phoenix,
7   Phoenix has performed every promise and condition required to be performed by it pursuant to the
8   Agreement except any which were or would be excused or prevented by the breaches of Chong as
9   set forth herein.

10    21.    On information and belief, Chong breached his obligations to Phoenix under the
11  Agreement by, among other things, engaging in the following activities: (a) misappropriating
12  Proprietary Information of Phoenix and using this information to develop products for DeviceVM;
13  (b) failing to keep Proprietary Information of Phoenix in trust and confidence; (c) using and
14  disclosing Phoenix's Proprietary Information on behalf of DeviceVM without the written consent of
15  Phoenix; (d) failing to return and deliver Phoenix's Proprietary Information upon termination of
16  employment with Phoenix; (e) failing to inform the PTO and other parties that the specific
17  inventions that were conceived while Chong was employed at Phoenix, and which are the subject of
18  this Action, had already been assigned to Phoenix or were otherwise owned by Phoenix.

19    22.    By reason of the foregoing, Phoenix has been damaged in an amount to be proven at
20  trial.

21

22

## SECOND CAUSE OF ACTION

## INTERFERENCE WITH CONTRACT AGAINST DEVICEVM

23    23.    Phoenix incorporates by reference the above paragraphs as though set forth fully
24  herein.

25    24.    At all times referenced herein the Agreement was and is a valid contract between
26  Phoenix and Chong.

27    25.    On information and belief, DeviceVM either knew or should have known of the
28  existence of the Agreement between Phoenix and Chong.

- 4 -

COMPLAINT

1    26.    On information and belief, DeviceVM induced Chong to breach the Agreement.

2    27.    By reason of DeviceVM's inducement, Phoenix has been damaged by the failure of

3  Chong to perform and complete his obligations in accordance with the terms of the Agreement, in a

4  sum to be proven at trial.

5    28.    DeviceVM's conduct has been willful, oppressive, and malicious and done with the

6  intent to injure DeviceVM and deprive Phoenix of its property and legal rights. Phoenix is therefore

7  entitled to exemplary and punitive damages in an amount sufficient to deter future wrongful

8  conduct.

9                                **THIRD CAUSE OF ACTION**

10                                **CONSTRUCTIVE TRUST**

11    29.    Phoenix incorporates by reference the above paragraphs as though set forth fully

12  herein.

13    30.    On information and belief, DeviceVM and Chong received a benefit from Phoenix

14  through its acquisition and retention of Phoenix's confidential and Proprietary Information and

15  inventions that Chong either assisted in conceiving and developing or had access to while employed

16  at Phoenix.

17    31.    DeviceVM and Chong's retention of these benefits is manifestly unjust, and is at the

18  expense of Phoenix. All of these benefits, including the inventions conceived by Chong, or with his

19  assistance, while employed at Phoenix, are owned by Phoenix pursuant to the Agreement with

20  Chong. Since these inventions and other confidential and Proprietary Information were exclusively

21  assigned to Phoenix under the Agreement, any retention of these inventions would be unjust.

22    32.    By virtue of the illegal activities by DeviceVM and Chong as alleged herein,

23  DeviceVM and Chong each hold certain property as a constructive trustee for Phoenix' benefit,

24  including but not limited to the following:

25          a.    The inventions claimed and/or disclosed in the Patents;

26          b.    All profits, royalties, and other benefits resulting from the exploitation of the

27  inventions claimed and/or disclosed products that incorporate the inventions conceived by Chong or

28  derived by Phoenix confidential information and Proprietary Information while employed at

                                        - 5 -
                                     COMPLAINT

1 | Phoenix, and the Patents, including all profits and royalties resulting from the manufacture, sale,

2 | distribution, and marketing of each version of DeviceVM's products;

3 |         c.    All software or other products derived from Defendants illegal activities;

4 |         d.    Any United States or foreign patents or patent applications that claim priority

5 | to the Patents and/or that are supported by the disclosures in the Patents; and

6 |         e.    The confidential and/or Proprietary Information that was misappropriated

7 | from Phoenix by DeviceVM and Chong.

8 | **FOURTH CAUSE OF ACTION**

9 | **UNFAIR BUSINESS PRACTICES AGAINST ALL DEFENDANTS**

10 |     33.    Phoenix incorporates by reference the above paragraphs as though set forth fully

11 | herein.

12 |     34.    In the course of the wrongful conduct alleged herein, the Defendants, and each of

13 | them, engaged in unfair and unlawful business practices in violation of the common law and

14 | Sections 17200 et seq. of the California Business and Professions Code including, but not limited

15 | to, the misappropriation of confidential and Proprietary Information of Phoenix.

16 |     35.    The continuing activities of the Defendants in developing and exploiting the

17 | confidential and Proprietary Information stolen from Phoenix constitute an on-going pattern and

18 | practice of unfair competition.

19 |     36.    The continuing activities of Defendants to misled Phoenix's customers and public by

20 | representing that Splashtop® was independently developed through its own intellectual property

21 | constitute an on-going pattern and practice of unfair competition.

22 |

23 |     37.    By reason of this activity, Phoenix has been harmed in an amount to be proven at

24 | trial, and the public misled about the true nature of DeviceVM's business. Injunctive relief is

25 | necessary to prevent further irreparable injury to Phoenix, and to put an immediate halt to

26 | DeviceVM and Chong's on-going practice and pattern of wrongful conduct. DeviceVM has

27 | obtained benefits from its unlawful activity, for which DeviceVM is required to disgorge or to make

28 | restitution.

- 6 -
COMPLAINT

1                      **FIFTH CAUSE OF ACTION**

2                       **CONVERSION**

3      38.    Phoenix incorporates by reference the above paragraphs as though set forth fully

4 herein.

5      39.    Phoenix is the owner of the confidential and Proprietary Information

6 misappropriated by DeviceVM and Chong as found in certain Patents. Under the Agreement and

7 Chong's legal obligations to Phoenix, this information is exclusively owned by Phoenix. Phoenix is

8 the owner of this information and has the exclusive right to possession of it.

9      40.    DeviceVM and Chong converted Phoenix's property by a series of wrongful acts.

10 On information and belief, Phoenix's property was converted by: (a) misappropriating the

11 confidential and Proprietary Information containing Phoenix's inventions; (b) taking the

12 confidential and Proprietary Information and the inventions contained therein to DeviceVM; and (c)

13 utilizing the confidential and Proprietary Information and the inventions contained therein to

14 prosecute patent applications for DeviceVM and to develop technology based on the information

15 and inventions.

16      41.    By converting the confidential and Proprietary Information and inventions that are

17 exclusively owned by Phoenix, DeviceVM and Chong have caused great damage to Phoenix, in an

18 amount to be proven at trial.

19      42.    DeviceVM's conduct has been willful, oppressive, and malicious and done with the

20 intent to injure DeviceVM and deprive Phoenix of its property and legal rights. Phoenix is therefore

21 entitled to exemplary and punitive damages in an amount sufficient to deter future wrongful

22 conduct.

23                     **SIXTH CAUSE OF ACTION**

24    **TRADE SECRET MISAPPROPRIATION AGAINST ALL DEFENDANTS**

25      43.    Phoenix incorporates by reference the above paragraphs as though set forth fully

26 herein.

27      44.    Upon information and belief, Defendants have misappropriated, and are using

28 Phoenix's trade secret information related to Phoenix's technology and business, without Phoenix's

- 7 -
COMPLAINT

1 | consent, and in order to compete directly with Phoenix.

2 | 45. Defendants' conduct violates California's Uniform Trade Secrets Act.

3 | 46. Phoenix has been irreparably harmed.

4 | 47. Phoenix has suffered damages in an amount to be proven at trial.

5 | **PRAYER FOR RELIEF**

6 | Wherefore, Phoenix prays judgment against Defendants as follows:

7 | A. For compensatory damages against Defendants to be proven at trial;

8 | B. For disgorgement and restitution from Defendants to be proven at trial;

9 | C. An award to Phoenix of punitive damages in a sum according to proof;

10 | D. An award to Phoenix of its costs, expenses and reasonable attorneys' fees incurred in

11 | bringing and prosecuting this action, pursuant to the Agreement;

12 | E. An order directing the Defendants to correct the records of the PTO to reflect that all

13 | intellectual property rights to the inventions conceived by Chong are owned by Phoenix, including

14 | but not limited to all rights to all patent applications or patents arising from Phoenix's confidential

15 | or Proprietary Information.

16 | F. A declaration that Phoenix was assigned all rights to the inventions conceived by

17 | Chong while employed at Phoenix under the terms of the Agreement, and therefore that these

18 | inventions are exclusively owned by Phoenix.

19 | G. Preliminarily and permanently enjoin the Defendants from:

20 | (1) disclosing, obtaining or using, or attempting to disclose, obtain or use any of

21 | Phoenix's confidential or Proprietary Information misappropriated from Phoenix,

22 | (2) disseminating or destroying any documents, material or things now in their

23 | possession that originated at Phoenix, that belong to Phoenix, or that embody or are derived from

24 | Phoenix's confidential or Proprietary Information, or that are otherwise relevant to the subject

25 | matter of this lawsuit,

26 | (3) manufacturing, selling, offering to sell, licensing, creating source code for,

27 | marketing, or advertising, any product that incorporates or performs any of the inventions

28 | misappropriated from Phoenix, or that is derived from any inventions or confidential or Proprietary

**PHOENIX TECHNOLOGIES, LTD.**
**California Operations**
**Employee Invention Assignment and**
**Proprietary Information Agreement**

**Benedict Chong**
**(Hand Delivered)**

In consideration of my employment or continued employment by Phoenix Technologies Ltd. ("Phoenix"), I hereby represent and agree as follows:

1. Employee understands that Phoenix is engaged in a continuous program of research, development, production and marketing in connection with its business and that, as an essential part of Employee's work with Phoenix, Employee is expected to make new contributions to and create inventions of value for Phoenix.

2. Employee agrees to promptly disclose in writing in confidence to Phoenix all inventions, improvements, and other innovations of any kind, whether or not patentable or copyrightable or protectable as trade secrets or mask works, that are made or conceived or first reduced to practice or created by Employee, either alone or jointly with others, during the period of Employee's employment, whether or not in the course of such employment ("Innovations"). Examples of Innovations include but are not limited to original works of authorship, computer programs, formulas, processes, databases, trade secrets, mechanical and electronic hardware, computer languages, user interfaces, documentation, marketing and new product plans, production processes, packaging and marketing techniques, and improvements to anything.

3. Employee agrees that all Innovations that (a) are not developed entirely on Employee's own time, (b) are developed using equipment, supplies, facilities or trade secrets of Phoenix, (c) result from work performed by Employee for Phoenix, or (d) relate at the time of conception or reduction to practice to the business or the actual or demonstrably anticipated research or development of Phoenix, will be the sole and exclusive property of Phoenix, and Employee hereby assigns to Phoenix any rights that Employee may have in any such Innovations and in any associated patents, patent applications, copyrights, trade secret rights, mask work rights, rights of priority and other intellectual property rights.

Employee is hereby notified by Phoenix that the provisions of this Section 3 do not apply to any innovation that qualifies fully under the provisions of Section 2870 of the California Labor Code, which states as follows:

(a) ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER:

(1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DEMONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR

(2) RESULTS FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER.

(b) TO THE EXTENT A PROVISION IN ANY EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER SUBDIVISIONS (a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.

Accordingly, Employee may request a written waiver from his or her manager which will act to formally acknowledge that Phoenix has no right, title or interest in Employee's Innovations that (a) are developed entirely on Employee's own time, (b) are developed using equipment, supplies, facilities or trade secrets not belonging to Phoenix, (c) result from work not performed by Employee for Phoenix, or (d) relate at the time of conception or reduction to practice to no business or actual or demonstrably anticipated research or development of Phoenix. Such written waiver must be signed by Employee's manager and Phoenix's Corporate Counsel and will be placed in Employee's personnel file with an original copy retained by Employee.

4. Employee agrees to assist Phoenix in every proper way to obtain for Phoenix and enforce patents, copyrights, mask work rights and other legal protections for Innovations belonging to Phoenix in any and all countries. Employee will execute any documents that Phoenix may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights and other legal protections. Employee's obligations under this Section will continue beyond the termination of Employee's employment with Phoenix, provided that Phoenix will compensate Employee at a reasonable rate after such termination for time actually spent by Employee at Phoenix's request on such assistance.

5. Employee hereby irrevocably transfers and assigns to Phoenix, and forever waives and agrees never to assert, any and all "Moral Rights" (as defined below) that Employee may have in or with respect to any Innovation. "Moral Rights" mean any right to claim authorship or be identified as the author of any Innovation, to object to any modification of, or other action in relation to, any Innovation, or any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

6. Employee understands that Employee's employment with Phoenix creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to Employee by Phoenix or that Employee may learn in the course of employment by Phoenix and that relates to the business, products, supplier, customers, research or development of Phoenix and its products ("Proprietary Information"). Such Proprietary Information includes but is not limited to Innovations, marketing plans, product plans, business strategies, financial information, forecasts, personnel information, customer lists and any other nonpublic technical or business information on that Employee knows or has reason to know Phoenix would like to treat as confidential for any purpose, such as maintaining a competitive advantage or avoiding undesirable publicity.

7. At all times, both during and after Employee's employment, Employee will keep all such Proprietary Information in confidence and trust, and will not use or disclose any of such Proprietary Information without the written consent of Phoenix, except as may be necessary to perform Employee's duties as an employee of Phoenix and for Phoenix's benefit. Upon termination of Employee's employment with Phoenix, Employee will promptly deliver to Phoenix all documents and materials of any nature pertaining to Employee's work with Phoenix, and Employee will not take with Employee any documents or materials or copies thereof containing any Proprietary Information.

8. Employee represents that Employee's performance of this Agreement and of Employee's duties as an employee with Phoenix will not breach any invention assignment or proprietary information or similar

agreement with any former employer or other party. Employee represents that employee will not bring with Employee to Phoenix or use in the performance of Employee's duties for Phoenix any documents, materials or information of a former employer that are not generally available to the public.

9. During, and for a period of one (1) year after termination of, Employee's employment with Phoenix, Employee will not directly or indirectly attempt to call on, solicit or take away suppliers, customers, employees or consultants of Phoenix for Employee's own benefit or for anyone else's.

10. Employee hereby authorizes Phoenix to notify others, including but not limited to customers of Phoenix and Employee's future employers, of the terms of this Agreement and Employee's responsibilities hereunder.

11. In the event of any violation of this Agreement by Employee, and in addition to any relief or remedies to which Phoenix may otherwise be entitled, Employee agrees that Phoenix shall have the right to an immediate injunction, and shall have the right to recover the reasonable attorneys' fees and court costs expended in connection with any litigation instituted to enforce this Agreement. "No waiver of any condition or covenant in this Agreement or failure to exercise a right or remedy shall be considered to imply or constitute a further waiver of the same or any other covenant, condition, right, or remedy."

12. "If any provision of this Agreement is declared invalid by any tribunal, such provision shall be deemed automatically adjusted to conform to the requirements for validity as declared at such time and, as so adjusted, shall be deemed a provision of this Agreement as though originally included herein. If the provision invalidated is of such a nature that it cannot be so adjusted, the provision shall be deleted from this Agreement as though it had never been included herein. In either case, the other provisions of this Agreement shall remain in effect."

13. Employee understands and agrees that this Agreement does not constitute a contract of employment or obligate Phoenix to employ employee for any stated period of time. Employee understands that Employee's employment with Phoenix is at will, and may be terminated by Phoenix at any time and for any reason, with or without cause.

This Agreement shall be effective as of the first day of Employee's employment with Phoenix: namely: _end August_, 1996. or for current employees: on _____, 1996.

Signature of Employee:

Accepted and acknowledged by Phoenix Technologies Ltd.:

Signature: Tina Randhaw Title: Staffing Coord 7/24/03
(Please Print)

3

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Karineh Khachatourian (SBN 202634) <br> MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C. <br> 5 Palo Alto Square - 6th Floor, 3000 El Camino Real <br> Palo Alto, CA 94306-2155 | |

TELEPHONE NO.: (650) 251-7700    FAX NO.: (650) 251-7739

ATTORNEY FOR *(Name):* Phoenix Technologies Ltd.

**F I L E D**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Santa Clara**

STREET ADDRESS: 191 North First Street

MAILING ADDRESS:

CITY AND ZIP CODE: San Jose, CA 95113

BRANCH NAME:

2009 JUL 17 P 2: 42

David H. Yamasaki, Chief Executive Officer/Clerk
County of Santa Clara, California

By_____ Deputy Clerk

CASE NAME: PHOENIX TECHNOLOGIES LTD. v.
DEVICEVM, INC. and BENEDICT CHONG

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|
| ☒ Unlimited  ☐ Limited <br> (Amount     (Amount <br> demanded    demanded is <br> exceeds $25,000)   $25,000 or less) | ☐ Counter   ☐ Joinder <br><br> Filed with first appearance by defendant <br> (Cal. Rules of Court, rule 3.402) | 1 0 9 C V 1 4 7 6 2 6 <br> JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☒ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☒ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☒ punitive

4. Number of causes of action *(specify):* Six (6): Breach of Contract; Interference with Contract; Constructive Trust; Unfair Business Practices; Conversion; and Trade Secret Misappropriation

5. This case ☐ is ☒ is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 17, 2009

Karineh Khachatourian
_____
(TYPE OR PRINT NAME)

►_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
DEVICEVM, INC., a Delaware corporation, and BENEDICT CHONG, an individual

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PHOENIX TECHNOLOGIES LTD., a Delaware corporation

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Superior Court of California, County of Santa Clara
191 North First Street, San Jose, CA 95113

**CASE NUMBER**
*(Número del Caso):*
109 CV 147624

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Karineh Khachatourian (SBN 202634)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
5 Palo Alto Square - 6th Floor, 3000 El Camino Real, Palo Alto, CA 94306-2155
Phone: (650) 251-7700

| DATE: August 31, 2009 (Fecha) | DAVID H. YAMASAKI Chief Executive Officer/Clerk Clerk, by (Secretario) | , Deputy (Adjunto) |
|---|---|---|

For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant;
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): DeviceVM, Inc., *a Delaware Corporation*
   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☐ by personal delivery on (date):

4668499v.1

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

1 | KARINEH KHACHATOURIAN (SBN 202634)
Email: kkhachatourian@mintz.com
2 | BRYAN J. SINCLAIR (SBN 205885)
Email: bsinclair@mintz.com
3 | JEFFREY M. RATINOFF (SBN 197241)
Email: jratinoff@mintz.com
4 | MINTZ LEVIN COHN FERRIS GLOVSKY
AND POPEO P.C.
5 | 5 Palo Alto Square - 6th Floor
3000 El Camino Real
6 | Palo Alto, CA 94306-2155
Telephone: (650) 251-7700
7 | Facsimile:   (650) 251-7739

8 | Attorneys for Plaintiffs
PHOENIX TECHNOLOGIES LTD.
9

10 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 | **COUNTY OF SANTA CLARA**

12 | **(UNLIMITED CIVIL CASE)**

| | |
|---|---|
| 13 \| PHOENIX TECHNOLOGIES LTD., a | Case No. 109CV147626 |
| Delaware corporation, | |
| 14 \|                        Plaintiff, | **FIRST AMENDED COMPLAINT FOR (1) BREACH OF CONTRACT, (2)** |
| 15 \|          vs. | **INTERFERENCE WITH CONTRACT, (3) TRADE SECRET MISAPPROPRIATION,** |
| 16 \| DEVICEVM, a Delaware corporation, and | **(4) UNFAIR BUSINESS PRACTICES, (5)** |
| BENEDICT CHONG, an individual, | **CONVERSION; AND (6)** |
| 17 \| | **CONSTRUCTIVE TRUST** |
| \|                       Defendants. | |
| 18 \| | **JURY TRIAL DEMAND** |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

FIRST AMENDED COMPLAINT

Plaintiff Phoenix Technologies Ltd. ("Phoenix"), for its first amended complaint against

2 Defendants DeviceVM, Inc. ("DeviceVM") and Benedict Chong ("Chong") (collectively,

3 "Defendants"), alleges as follows:

## THE PARTIES

5   1.   Phoenix Technologies Ltd. is a Delaware corporation with its principal place of

6 business in Milpitas, California.

7   2.   Founded in 1979, Phoenix designs, develops and supports system software and

8 related applications and services for personal computers ("PCs") and other computing devices.

9 Phoenix's products support and enable the compatibility, performance, connectivity, security and

10 management of the various components and technologies used in such devices. Phoenix established

11 industry leadership and effectively created the PC clone industry with its original BIOS product for

12 Compaq in 1983.

13   3.   Phoenix sells its products primarily to computer and component device

14 manufacturers. The company also provides training, consulting, maintenance and engineering

15 services to its customers.

16   4.   DeviceVM Inc. is a Delaware corporation with its principal place of business in San

17 Jose, California. On information and belief, DeviceVM is a privately held software company

18 headquartered in Silicon Valley with offices in Taiwan and China. On information and belief,

19 DeviceVM was founded in 2006 and is funded by various venture capital firms and private

20 investors based in China and the United States.

21   5.   On information and belief, DeviceVM markets, sells, distributes and offers for sale a

22 product named Splashtop®, which it alleges is an instant-on pre-boot environment, developed by

23 DeviceVM, that allows a user to rapidly access the Web and key applications without the need to

24 boot the main operating system.

25   6.   Phoenix is informed and believes, and based thereon alleges that Chong, an

26 individual, works and resides in San Jose, California. Chong is a former Phoenix employee who,

27 Phoenix is informed and believes, and based thereon alleges, has worked for and is still employed

28 by DeviceVM.

- 1 -
FIRST AMENDED COMPLAINT

## BACKGROUND ALLEGATIONS

7. Chong worked as an employee of Phoenix for eight years, from approximately November 1996 until November 2004. During his tenure at Phoenix, he worked as a "Principal Software Engineer" and/or "Team Lead." Generally speaking, these titles describe a senior level engineer who serves as the technical leader of a specific team, manages a group of engineers working on that team, and serves a role as an individual contributor in the development of a product line.

8. In 1996, Phoenix hired Chong to play a significant role in Phoenix's engineering group responsible for Phoenix's development of core systems technology.

9. Since Chong had access to Phoenix's most sensitive information, on or about November 1996, Phoenix presented and Chong signed an Employee Inventions and Proprietary Information Agreement (the "Agreement") as a condition of Chong's employment by Phoenix. A true and correct copy of the Agreement is attached hereto as Exhibit A, and is incorporated herein by reference.

10. The Agreement is valid and fully enforceable against Chong.

11. Pursuant to Paragraph 3 of the Agreement, Chong agreed that all Innovations that: (a) are not developed entirely on Employee's own time; (b) are developed using equipment, supplies, facilities, confidential and proprietary information or trade secrets of Phoenix; (c) result from work performed by Employee for Phoenix; or (d) relate at the time of conception or reduction to practice to the business or the actual or demonstrably anticipated research or development of Phoenix, will be the sole and exclusive property of Phoenix. Chong also agreed to assign to Phoenix any rights that he may have in any such Innovations and in any associated patents, patent applications, copyrights, trade secret rights, mask work rights, rights of priority and other intellectual property rights.

12. Pursuant to Paragraph 4 of the Agreement, Chong agreed to assist Phoenix in every proper way to obtain for Phoenix and enforce patents, copyrights, mask work rights and other legal protections for Innovations belonging to Phoenix in any and all countries.

13. Pursuant to Paragraph 5 of the Agreement, Chong agreed to irrevocably transfer and

- 2 -
FIRST AMENDED COMPLAINT

1   assign to Phoenix, and forever waive and agree never to assert, any right to claim authorship or be
2   identified as the author of any Innovation, to object to any modification of, or other action in
3   relation to. any Innovation, or any similar right, existing under judicial or statutory law of any
4   country in the world, or under any treaty.

5        14.    Pursuant to Paragraph 6 of the Agreement, Chong acknowledged that his
6   employment with Phoenix created a relationship of confidence and trust with respect to any
7   information of a confidential and proprietary or secret nature that was disclosed to him by Phoenix,
8   or that he learned in the course of employment by Phoenix and that related to the business, products,
9   supplier, customers, research or development of Phoenix and its products. Such Proprietary
10   Information includes but is not limited to Innovations, marketing plans, product plans, business
11   strategies, financial information, forecasts, personnel information, customer lists and any other
12   nonpublic technical or business information that Employee knows or has reason to know Phoenix
13   would like to treat as confidential for any purpose, such as product development, maintaining a
14   competitive advantage. or avoiding undesirable publicity (hereinafter "Proprietary Information").

15        15.    Pursuant to Paragraph 7 of the Agreement, Chong agreed at all times, both during
16   and after his employment, to keep all such Proprietary Information in confidence and trust, and
17   agreed not to use or disclose any such Proprietary Information without the written consent of
18   Phoenix, except as may be necessary to perform his duties as an employee of Phoenix and for
19   Phoenix's benefit.

20        16.    In 2000, Phoenix began developing its FirstWare product line. Phoenix formed an
21   internal team that worked on the development of Phoenix's own Operating System for all related
22   products. The team was called the "Firmware OS Team" that was referred to internally as the "FOS
23   Team." The FOS Team worked on the FirstWare product line and Chong was a member of the FOS
24   Team. Chong was also a member of Phoenix's "Appliance Platform Engineering Group" between
25   approximately 2002 and the date of his departure from Phoenix.

26        17.    In 2001. Phoenix announced the availability of FirstView Connect product line. This
27   product contained, *inter alia*, technology that was an "instant on" web browser appliance that
28   provided instant-on Internet access and browsing capability for Internet TV, Internet Video Players,

1  interactive screen phones, game consoles, direct from memory set top boxes and handheld
2  appliances.

3      18.    Chong was involved in various aspects of the development of FirstView Connect and
4  served as Team Lead for the product development efforts.

5      19.    During 2002, while Chong was still a member of the FOS Team, Phoenix developed
6  another product called FirstSight which was a graphic user interface used to access applications
7  residing on the hard disk and could be incorporated into the BIOS.

8      20.    In addition, in the Fall of 2002, Phoenix's development team began working on the
9  Tripoli project which was focused on the development of a product called "cME Console." The
10  Tripoli project involved a Linux-based operating system environment upon which other applications
11  could run. The cME Console product could run applications or boot stand-alone Protected Service
12  Areas ("PSAs").

13      21.    In 2003, Chong, along with two other Phoenix engineers, conceived of a new boot
14  loader methodology which stored the bootloader in the BIOS and used the BIOS as the operating
15  system bootloader. The Phoenix project incorporating this methodology was called Raptor. The
16  invention was disclosed in United States Patent Application No. 10/842,780 entitled "Media Boot
17  Loader" (the "'780 Application"), filed on May 11, 2004, which names Chong as the first named
18  inventor.

19      22.    Likewise, during 2003, other members of the Phoenix FOS Team were continuing to
20  develop the technology to be utilized as the platform for the Console product referenced in
21  Paragraph 20. In connection with their development, on September 24, 2004 Phoenix prepared and
22  filed United States Patent Application No. 10/950,199 entitled "Operating System Transfer and
23  Launch Without Performing POST" (the "'199 Application"). The inventions in the '199
24  Application could be utilized to rapidly boot a second OS from a first OS without going through
25  Power on Self Text ("POST").

26      23.    In connection with its ongoing FirstWare product development, Phoenix publicly
27  introduced its FirstWare Assistant product in September of 2003. FirstWare Assistant provided
28  instant-on access to personal information management (PIM) data from Microsoft Outlook without

- 4 -
FIRST AMENDED COMPLAINT

1 needing to first launch the Windows operating system. The product utilized a Phoenix customized
2 Windows NT bootloader that gave users a "hot key" option during boot to either load FirstWare
3 Assistant or the default operating system. Chong was the author for all revisions of the Product
4 Requirements Document ("PRD") for FirstWare Assistant 1.0.0.1.

5     24.    In addition to the PRD, Chong also authored at least the following documents: (a)
6 PRD for FirstWare Assistant 1.1; (b) PRD for FirstWare Assistant Challenger (i.e., FirstWare
7 Assistant 2.x); (c) Functional Specification for FirstWare Assistant Challenger Release 1B,
8 FirstWare Assistant Challenger Release 2 and FirstWare Assistant 2.0.1; (d) the Functional
9 Specification for FirstWare Assistant Challenger Release 2; (e) a detailed technical disclosure in a
10 FirstWare Assistant PowerPoint; and (f) other related technical documents.

11     25.    As Chong's involvement with the FirstWare Assistant was so substantial, he was
12 made Team Lead for the engineers working on the product line. In that capacity, he oversaw the
13 FirstWare Assistant product development efforts and worked closely with engineers working in
14 tandem on related Phoenix development projects directed at running various appliances in an
15 instant-on setting and Phoenix's "Always On" technology.

16     26.    In connection with his extensive involvement with the various Phoenix projects and
17 products identified above, Chong developed, had access to, and had substantial involvement with
18 Phoenix Proprietary Information during his eight years of employment by Phoenix. Chong's last
19 day as a Phoenix engineer was November 19, 2004.

20     27.    On information and belief, DeviceVM hired Chong as a Director, Program
21 Management, in January 2007.

22     28.    Not long after Chong joined DeviceVM, it filed United States Provisional Patent
23 Application No. 60/890,121 on February 15, 2007 entitled "Instant-On Appliances" (the "'121
24 Provisional Application"). Chong is a named inventor on the '121 Provisional Application.

25     29.    On July 2, 2007, DeviceVM filed United States Patent Application No. 11/772,700
26 entitled "Method and Apparatus for Virtualization of Appliances" (the "'700 Application"). Chong
27 is a named inventor on the '700 Application. The '700 Application claimed priority to, *inter alia,*
28 the '121 Provisional Application and ultimately issued as U.S. Patent No. 7,441,113 (the "'113

- 5 -
FIRST AMENDED COMPLAINT

1   Patent") on October 21, 2008. Upon information and belief, Device VM's Spashtop® product
2   practices the inventions claimed in the '113 Patent.

3    30.   On July 3, 2007, DeviceVM filed international application no. PCT/US07/72778
4   entitled "Method and Apparatus for Virtualization of Appliances" (the "PCT Application"). The
5   PCT Application claims priority to, *inter alia,* the '121 Provisional Application and the '700
6   Application (which ultimately issued as the '113 Patent). Chong is a named inventor on the PCT
7   Application.

8    31.   On August 1, 2008, DeviceVM filed United States Application no. 12/184,374
9   entitled "Integration Model for Instant-On Environment" (the "'374 Application"). Chong is a
10   named inventor on the '374 Application.

11    32.   On August 28, 2008, DeviceVM filed United States Application no. 12/200,758
12   entitled "Method and Apparatus for Virtualization of Appliances" (the "'758 Application") as a
13   continuation of the '113 Patent. Chong is a named inventor on the '758 Application.

14    33.   Finally, on September 26, 2008, DeviceVM filed United States Application no.
15   12/239,701 entitled "Installation of a Virtualization Environment" (the "'701 Application") as a
16   continuation-in-part of the '758 Application. Chong is a first named inventor on the '701
17   Application. The '121 Provisional Application, the '374 Application, the '700 Application, the
18   '758 Application, the '701 Application, and the PCT Application are collectively referred to as the
19   "DeviceVM Patent Applications."

20    34.   On information and belief, Chong has disclosed Phoenix Proprietary Information to
21   DeviceVM. DeviceVM has included Phoenix Proprietary Information in the DeviceVM Patent
22   Applications and such information is contained in the '113 Patent. Upon information and belief,
23   DeviceVM has incorporated Phoenix Proprietary Information in its Spashtop® product and this
24   product contains inventions misappropriated from Phoenix through Chong.

25    35.   On information and belief, based in part on the misappropriated Phoenix Proprietary
26   Information, DeviceVM has misled Phoenix's potential customers and the public about the true
27   nature of its business and the purported independent development of its Splashtop® product.

28    36.   Phoenix only became aware of DeviceVM's and Chong's unlawful activities in June

1 | 2009. In addition, Phoenix recently discovered evidence of the use of an anti-forensic wiping tool
2 | on the Phoenix computer that was assigned to Chong while employed at Phoenix. Upon
3 | information and belief, Chong used such a tool to conceal information from Phoenix or destroy
4 | evidence of misappropriation of Phoenix Proprietary Information.

5 | ## FIRST CAUSE OF ACTION

6 | ## BREACH OF CONTRACT

7 | ## (AGAINST CHONG)

8 | 37.    Phoenix incorporates by reference the above paragraphs as though set forth fully
9 | herein.

10 | 38.    As a condition of his employment, Chong signed the Agreement with Phoenix,
11 | Phoenix has performed every promise and condition required to be performed by it pursuant to the
12 | Agreement except any which were or would be excused or prevented by the breaches of Chong as
13 | set forth herein.

14 | 39.    On information and belief, Chong breached his obligations to Phoenix under the
15 | Agreement by, among other things, engaging in the following activities: (a) misappropriating
16 | Proprietary Information of Phoenix and using this information to develop products for DeviceVM
17 | and submit in DeviceVM Patent Applications; (b) failing to keep Proprietary Information of
18 | Phoenix in trust and confidence; (c) using and disclosing Phoenix's Proprietary Information on
19 | behalf of DeviceVM without the written consent of Phoenix; (d) failing to return and deliver
20 | Phoenix's Proprietary Information upon termination of employment with Phoenix; and (e) failing to
21 | inform the PTO and other parties that the specific inventions that were conceived while Chong was
22 | employed at Phoenix, and which are the subject of this Action, had already been assigned to
23 | Phoenix or were otherwise owned by Phoenix.

24 | 40.    By reason of the foregoing, Phoenix has been damaged in an amount to be proven at
25 | trial.

26 | ## SECOND CAUSE OF ACTION

27 | ## INTERFERENCE WITH CONTRACT AGAINST DEVICEVM

28 | 41.    Phoenix incorporates by reference the above paragraphs as though set forth fully

- 7 -
FIRST AMENDED COMPLAINT

1  herein.

2     42.    At all times referenced herein the Agreement was and is a valid contract between
3  Phoenix and Chong.

4     43.    On information and belief, DeviceVM either knew or should have known of the
5  existence of the Agreement between Phoenix and Chong.

6     44.    On information and belief, DeviceVM induced Chong to breach the Agreement.

7     45.    By reason of DeviceVM's inducement, Phoenix has been damaged by the failure of
8  Chong to perform and complete his obligations in accordance with the terms of the Agreement, in a
9  sum to be proven at trial.

10    46.    DeviceVM's conduct has been willful, oppressive, and malicious, and done with the
11  intent to injure DeviceVM and deprive Phoenix of its property and legal rights. Phoenix is therefore
12  entitled to exemplary and punitive damages in an amount sufficient to deter future wrongful
13  conduct.

14                        **THIRD CAUSE OF ACTION**

15                        **CONSTRUCTIVE TRUST**

16    47.    Phoenix incorporates by reference the above paragraphs as though set forth fully
17  herein.

18    48.    On information and belief, DeviceVM and Chong received a benefit from Phoenix
19  through its acquisition and retention of Phoenix's confidential and Proprietary Information and
20  inventions that Chong either assisted in conceiving and developing or had access to while employed
21  at Phoenix.

22    49.    DeviceVM and Chong's retention of these benefits is manifestly unjust, and is at the
23  expense of Phoenix. All of these benefits, including the inventions conceived by Chong, or with his
24  assistance, while employed at Phoenix, are owned by Phoenix pursuant to the Agreement with
25  Chong. Since these inventions and other confidential and Proprietary Information were exclusively
26  assigned to Phoenix under the Agreement, any retention of these inventions would be unjust.

27    50.    By virtue of the illegal activities by DeviceVM and Chong as alleged herein,
28  DeviceVM and Chong each hold certain property as a constructive trustee for Phoenix's benefit,

                              - 8 -

1  including but not limited to the following:

2              a.       The inventions claimed and/or disclosed in the DeviceVM Patent

3  Applications;

4              b.       The '113 Patent;

5              c.       All profits, royalties, and other benefits resulting from the exploitation of the

6  inventions claimed and/or disclosed products that incorporate the inventions conceived by Chong at

7  Phoenix or derived by Phoenix confidential information and Proprietary Information while

8  employed at Phoenix, and the Device VM Patent Applications, and the '113 Patent, including all

9  profits and royalties resulting from the manufacture, sale, distribution, and marketing of each

10  version of DeviceVM's products;

11             d.       All software or other products derived from Defendants' illegal activities;

12             e.       Any United States or foreign patents or patent applications that claim priority

13  to the DeviceVM Patent Applications, the '113 Patent and/or that are supported by the disclosures

14  in any DeviceVM Patent Application or the '113 Patent; and

15             f.       The confidential and/or Proprietary Information that was misappropriated

16  from Phoenix by DeviceVM and Chong.

17                                **FOURTH CAUSE OF ACTION**

18                **UNFAIR BUSINESS PRACTICES AGAINST ALL DEFENDANTS**

19        51.      Phoenix incorporates by reference the above paragraphs as though set forth fully

20  herein.

21        52.      In the course of the wrongful conduct alleged herein, the Defendants, and each of

22  them, engaged in unfair and unlawful business practices in violation of the common law and

23  Sections 17200 et seq. of the California Business and Professions Code including, but not limited

24  to, the misappropriation of confidential and Proprietary Information of Phoenix.

25        53.      The continuing activities of the Defendants in developing and exploiting the

26  confidential and Proprietary Information stolen from Phoenix constitute an on-going pattern and

27  practice of unfair competition.

28        54.      The continuing activities of Defendants to mislead Phoenix's customers and the

                                       - 9 -
                           FIRST AMENDED COMPLAINT

1  public by representing that Splashtop® was independently developed through its own intellectual
2  property constitute an on-going pattern and practice of unfair competition.

3          55.     By reason of this activity, Phoenix has been harmed in an amount to be proven at
4  trial, and the public has been misled about the true nature of DeviceVM's business. Injunctive
5  relief is necessary to prevent further irreparable injury to Phoenix, and to put an immediate halt to
6  DeviceVM and Chong's on-going practice and pattern of wrongful conduct. DeviceVM has
7  obtained benefits from its unlawful activity, for which DeviceVM is required to disgorge or to make
8  restitution.

9                          **FIFTH CAUSE OF ACTION**

10                              **CONVERSION**

11         56.     Phoenix incorporates by reference the above paragraphs as though set forth fully
12  herein.

13         57.     Phoenix is the owner of the confidential and Proprietary Information
14  misappropriated by DeviceVM and Chong as found in certain DeviceVM Patent Applications
15  and/or the '113 Patent. Under the Agreement and Chong's legal obligations to Phoenix, this
16  information is exclusively owned by Phoenix. Phoenix is the owner of this information and has the
17  exclusive right to possession of it.

18         58.     DeviceVM and Chong converted Phoenix's property by a series of wrongful acts.
19  On information and belief, Phoenix's property was converted by: (a) misappropriating the
20  confidential and Proprietary Information containing Phoenix's inventions; (b) taking the
21  confidential and Proprietary Information and the inventions contained therein to DeviceVM; and (c)
22  utilizing the confidential and Proprietary Information and the inventions contained therein to
23  prosecute patent applications for DeviceVM and to develop technology based on the information
24  and inventions.

25         59.     By converting the confidential and Proprietary Information and inventions that are
26  exclusively owned by Phoenix, DeviceVM and Chong have caused great damage to Phoenix, in an
27  amount to be proven at trial.

28         60.     DeviceVM's conduct has been willful, oppressive, and malicious, and done with the

                              - 10 -

1   intent to injure DeviceVM and deprive Phoenix of its property and legal rights. Phoenix is therefore

2   entitled to exemplary and punitive damages in an amount sufficient to deter future wrongful

3   conduct.

4

5                                    **SIXTH CAUSE OF ACTION**

6           **TRADE SECRET MISAPPROPRIATION AGAINST ALL DEFENDANTS**

7       61.    Phoenix incorporates by reference the above paragraphs as though set forth fully

8   herein.

9       62.    Upon information and belief, Defendants have misappropriated, and are using

10  Phoenix's trade secret information related to Phoenix's technology and business, without Phoenix's

11  consent, and in order to compete directly with Phoenix.

12      63.    Defendants' conduct violates California's Uniform Trade Secrets Act.

13      64.    Phoenix has been irreparably harmed.

14      65.    Phoenix has suffered damages in an amount to be proven at trial.

15                                    **PRAYER FOR RELIEF**

16  Wherefore, Phoenix prays judgment against Defendants as follows:

17      A.     For compensatory damages against Defendants to be proven at trial;

18      B.     For disgorgement and restitution from Defendants to be proven at trial;

19      C.     An award to Phoenix of punitive damages in a sum according to proof;

20      D.     An award to Phoenix of its costs, expenses and reasonable attorneys' fees incurred in

21  bringing and prosecuting this action, pursuant to the Agreement;

22      E.     An order directing the Defendants to correct the records of the PTO to reflect that all

23  intellectual property rights to the inventions conceived by Chong are owned by Phoenix, including

24  but not limited to all rights to all DeviceVM Patent Applications or issued patents arising from

25  Phoenix's confidential or Proprietary Information;

26      F.     A declaration that Phoenix was assigned all rights to the inventions conceived by

27  Chong while employed at Phoenix under the terms of the Agreement, and therefore that these

28  inventions are exclusively owned by Phoenix;

                                    - 11 -
                            FIRST AMENDED COMPLAINT

G.       Preliminarily and permanently enjoin the Defendants from:

(1)       disclosing, obtaining or using, or attempting to disclose, obtain or use any of Phoenix's confidential or Proprietary Information misappropriated from Phoenix,

(2)       disseminating or destroying any documents, material or things now in their possession that originated at Phoenix, that belong to Phoenix, or that embody or are derived from Phoenix's confidential or Proprietary Information, or that are otherwise relevant to the subject matter of this lawsuit,

(3)       manufacturing, selling, offering to sell, licensing, creating source code for, marketing, or advertising, any product that incorporates or performs any of the inventions misappropriated from Phoenix, or that is derived from any inventions or confidential or Proprietary Information misappropriated by the Defendants.

H.       An order imposing a constructive trust for the benefit of Phoenix over:

(1)       the inventions claimed and/or disclosed in the Patents, and all DeviceVM products based on and/or incorporating those inventions;

(2)       all profits, royalties, and other benefits resulting from the exploitation of the inventions claimed and/or disclosed in the Patents, including all profits and royalties resulting from the manufacture, sale, distribution, and marketing of each version of DeviceVM's products.

(3)       all software or other products that incorporate the inventions conceived by Chong while employed at Phoenix, and any products derived from DeviceVM's illegal activities;

(4)       any United States or foreign patents or patent applications that claim priority to the '113 Patent and/or that are supported by the disclosures in the DeviceVM Patent Applications,

(5)       the confidential and/or Proprietary Information that was misappropriated from Phoenix by DeviceVM and Chong,

(6)       any profits, revenues, or other benefits obtained by the Defendants as a result of their utilization of the inventions contained in the '113 Patent or DeviceVM Patent Applications; and

I.       For such other and further relief as may be awarded at the trial of this matter

- 12 -
FIRST AMENDED COMPLAINT

1 | according to proof.

2 | Dated: August 31, 2009          Respectfully submitted,

3 |                                 MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

4 |

5 |

    By:   KARINEH KHACHATOURIAN
6 |       BRYAN J. SINCLAIR
        JEFFREY M. RATINOFF
7 |

    Attorneys for Plaintiff,
8 |   PHOENIX TECHNOLOGIES LTD.

9 |

10 |

11 | 4703132v.1

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

- 13 -
FIRST AMENDED COMPLAINT

Exhibit A

## PHOENIX TECHNOLOGIES, LTD.
### California Operations
### Employee Invention Assignment and
### Proprietary Information Agreement

**Benedict Chong**
**(Hand Delivered)**

In consideration of my employment or continued employment by Phoenix Technologies Ltd. ("Phoenix"), I hereby represent and agree as follows:

1. Employee understands that Phoenix is engaged in a continuous program of research, development, production and marketing in connection with its business and that, as an essential part of Employee's work with Phoenix, Employee is expected to make new contributions to and create inventions of value for Phoenix.

2. Employee agrees to promptly disclose in writing in confidence to Phoenix all inventions, improvements, and other innovations of any kind, whether or not patentable or copyrightable or protectable as trade secrets or mask works, that are made or conceived or first reduced to practice or created by Employee, either alone or jointly with others, during the period of Employee's employment, whether or not in the course of such employment ("Innovations"). Examples of Innovations include but are not limited to original works of authorship, computer programs, formulas, processes, databases, trade secrets, mechanical and electronic hardware, computer languages, user interfaces, documentation, marketing and new product plans, production processes, packaging and marketing techniques, and improvements to anything.

3. Employee agrees that all Innovations that (a) are not developed entirely on Employee's own time, (b) are developed using equipment, supplies, facilities or trade secrets of Phoenix, (c) result from work performed by Employee for Phoenix, or (d) relate at the time of conception or reduction to practice to the business or the actual or demonstrably anticipated research or development of Phoenix, will be the sole and exclusive property of Phoenix, and Employee hereby assigns to Phoenix any rights that Employee may have in any such Innovations and in any associated patents, patent applications, copyrights, trade secret rights, mask work rights, rights of priority and other intellectual property rights.

Employee is hereby notified by Phoenix that the provisions of this Section 3 do not apply to any Innovation that qualifies fully under the provisions of Section 2870 of the California Labor Code, which states as follows:

(a) ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER:

(1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DEMONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR

(2) RESULTS FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER.

1

(b)  TO THE EXTENT A PROVISION IN ANY EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER SUBDIVISIONS (a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.

Accordingly, Employee may request a written waiver from his or her manager which will act to formally acknowledge that Phoenix has no right, title or interest in Employee's Innovations that (a) are developed entirely on Employee's own time, (b) are developed using equipment, supplies, facilities or trade secrets not belonging to Phoenix, (c) result from work not performed by Employee for Phoenix, or (d) relate at the time of conception or reduction to practice to no business or actual or demonstrably anticipated research or development of Phoenix. Such written waiver must be signed by Employee's manager and Phoenix's Corporate Counsel and will be placed in Employee's personnel file with an original copy retained by Employee.

4.  Employee agrees to assist Phoenix in every proper way to obtain for Phoenix and enforce patents, copyrights, mask work rights and other legal protections for Innovations belonging to Phoenix in any and all countries. Employee will execute any documents that Phoenix may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights and other legal protections. Employee's obligations under this Section will continue beyond the termination of Employee's employment with Phoenix, provided that Phoenix will compensate Employee at a reasonable rate after such termination for time actually spent by Employee at Phoenix's request on such assistance.

5.  Employee hereby irrevocably transfers and assigns to Phoenix, and forever waives and agrees never to assert, any and all "Moral Rights" (as defined below) that Employee may have in or with respect to any Innovation. "Moral Rights" mean any right to claim authorship or be identified as the author of any Innovation, to object to any modification of, or other action in relation to, any Innovation, or any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

6.  Employee understands that Employee's employment with Phoenix creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to Employee by Phoenix or that Employee may learn in the course of employment by Phoenix and that relates to the business, products, supplier, customers, research or development of Phoenix and its products ("Proprietary Information"). Such Proprietary Information includes but is not limited to Innovations, marketing plans, product plans, business strategies, financial information, forecasts, personnel information, customer lists and any other nonpublic technical or business information on that Employee knows or has reason to know Phoenix would like to treat as confidential for any purpose, such as maintaining a competitive advantage or avoiding undesirable publicity.

7.  At all times, both during and after Employee's employment, Employee will keep all such Proprietary Information in confidence and trust, and will not use or disclose any of such Proprietary Information without the written consent of Phoenix, except as may be necessary to perform Employee's duties as an employee of Phoenix and for Phoenix's benefit. Upon termination of Employee's employment with Phoenix, Employee will promptly deliver to Phoenix all documents and materials of any nature pertaining to Employee's work with Phoenix, and Employee will not take with Employee any documents or materials or copies thereof containing any Proprietary Information.

8.  Employee represents that Employee's performance of this Agreement and of Employee's duties as an employee with Phoenix will not breach any invention assignment or proprietary information or similar

agreement with any former employer or other party. Employee represents that employee will not bring with Employee to Phoenix or use in the performance of Employee's duties for Phoenix any documents, materials or information of a former employer that are not generally available to the public.

9. During, and for a period of one (1) year after termination of, Employee's employment with Phoenix, Employee will not directly or indirectly attempt to call on, solicit or take away suppliers, customers, employees or consultants of Phoenix for Employee's own benefit or for anyone else's.

10. Employee hereby authorizes Phoenix to notify others, including but not limited to customers of Phoenix and Employee's future employers, of the terms of this Agreement and Employee's responsibilities hereunder.

11. In the event of any violation of this Agreement by Employee, and in addition to any relief or remedies to which Phoenix may otherwise be entitled, Employee agrees that Phoenix shall have the right to an immediate injunction, and shall have the right to recover the reasonable attorneys' fees and court costs expended in connection with any litigation instituted to enforce this Agreement. "No waiver of any condition or covenant in this Agreement or failure to exercise a right or remedy shall be considered to imply or constitute a further waiver of the same or any other covenant, condition, right, or remedy."

12.     "If any provision of this Agreement is declared invalid by any tribunal, such provision shall be deemed automatically adjusted to conform to the requirements for validity as declared at such time and, as so adjusted, shall be deemed a provision of this Agreement as though originally included herein. If the provision invalidated is of such a nature that it cannot be so adjusted, the provision shall be deleted from this Agreement as though it had never been included herein. In either case, the other provisions of this Agreement shall remain in effect."

13. Employee understands and agrees that this Agreement does not constitute a contract of employment or obligate Phoenix to employ employee for any stated period of time. Employee understands that Employee's employment with Phoenix is at will, and may be terminated by Phoenix at any time and for any reason, with or without cause.

This Agreement shall be effective as of the first day of Employee's employment with Phoenix: namely: _end August_ , 1996. or for current employees: on _____ , 1996.

Signature of Employee:

Accepted and acknowledged by Phoenix Technologies Ltd.:

Signature: _Tina Randhaw_ Title: _Staffing Coord_ 7/24/03
     (Please Print)

3

SEP. 2. 2009  4:54PM  & A LEGAL SERVICE 6506974640  NO. 3133  P. 22

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANTS:**
*(AVISO AL DEMANDADO):*
DEVICEVM, INC., a Delaware corporation, and BENEDICT CHONG, an
individual

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
PHOENIX TECHNOLOGIES LTD., a Delaware corporation

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

ENDORSED

2009 JUL 17 P 2: 40

David H. Yamasaki Chief Executive Officer/Clerk
County of Santa Clara, California
By:

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* C V 1 4 7 6 2 6 |
|---|---|

Superior Court of California, County of Santa Clara
191 North First Street, San Jose, CA 95113

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Karineh Khachatourian (SBN 202834)
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
5 Palo Alto Square - 6th Floor, 3000 El Camino Real, Palo Alto, CA 94306-2155
Phone: (650) 251-7700

| DATE: July 17, 2009 *(Fecha)* | DAVID H. YAMASAKI  Clerk, by | G. Flaherty , Deputy *(Adjunto)* |
|---|---|---|
| | Chief Executive Officer, Clerk/Secretario | |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

**NOTICE TO THE PERSON SERVED: You are served**
1. ☐ as an individual defendant,
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* DeviceVM, Inc., a Delaware Corporation
   under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

4668499v.1

Page 1 of 1

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SEP. 2. 2009 4:55PM    A LEGAL SERVICE 6506974640      NO. 3133   P. 23

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State bar number and address)*:<br>Karineh Khachatourian (SBN 202634)<br>MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.<br>5 Palo Alto Square - 6th Floor, 3000 El Camino Real<br>Palo Alto, CA 94306-2155<br>  TELEPHONE NO. (650) 251-7700     FAX NO. (650) 251-7739<br>ATTORNEY FOR *(Name)*: Phoenix Technologies Ltd. | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Santa Clara**
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME:

ENDORSED

2009 JUL 17 P 2: 40

CASE NAME: PHOENIX TECHNOLOGIES LTD. v.
DEVICEVM, INC. and BENEDICT CHONG

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>**109CV147626** |
|---|---|---|---|---|
| ☒ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400–3.403)** |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | ☐ Other collections (09) | ☐ Construction defect (10) |
| **Damage/Wrongful Death) Tort** | ☐ Insurance coverage (18) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Other contract (37) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | **Real Property** | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | ☐ Eminent domain/Inverse | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | types (41) |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | **Enforcement of Judgment** |
| ☐ Civil rights (08) | **Unlawful Detainer** | ☐ Enforcement of judgment (20) |
| ☐ Defamation (13) | ☐ Commercial (31) | **Miscellaneous Civil Complaint** |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ RICO (27) |
| ☒ Intellectual property (19) | ☐ Drugs (38) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Partnership and corporate governance (21) |
| **Employment** | ☐ Petition re: arbitration award (11) | ☐ Other petition *(not specified above)* (43) |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☒ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel   e. ☐ Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve         in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary b. ☒ nonmonetary; declaratory or injunctive relief    c. ☒ punitive
4. Number of causes of action *(specify):* Six (6): Breach of Contract; Interference with Contract; Constructive Trust; Unfair Business Practices; Conversion; and Trade Secret Misappropriation
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: July 17, 2009
Karineh Khachatourian
(TYPE OR PRINT NAME)     ►    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) (*if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto*)
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability (*not asbestos or
  toxic/environmental*) (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) (*not civil
  harassment*) (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36) Other
  Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract (*not unlawful detainer
    or wrongful eviction*)
  Contract/Warranty Breach–Seller
    Plaintiff (*not fraud or negligence*)
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage (*not provisionally
  complex*) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (*not eminent
    domain, landlord/tenant, or
    foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  (*arising from provisionally complex
  case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment (*non-
    domestic relations*)
  Sister State Judgment
  Administrative Agency Award
    (*not unpaid taxes*)
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
  above*) (42)
  Declaratory Relief Only
  Injunctive Relief Only (*non-
    harassment*)
  Mechanics Lien
  Other Commercial Complaint
    Case (*non-tort/non-complex*)
  Other Civil Complaint
    (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition (*not specified
  above*) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

American LegalNet Inc
www.FormsWorkflow.com

4668490v.1

SEP. 2. 2009   4:56PM   A LEGAL SERVICE 6506974640        NO. 3133   P. 25

**ATTACHMENT CV-5012**

## CIVIL LAWSUIT NOTICE
**Superior Court of California, County of Santa Clara**
**191 N. First St., San Jose, CA 95113**

CASE NUMBER: 1 0 9 C V 1 4 7 6 2 6

> ### PLEASE READ THIS ENTIRE FORM

**PLAINTIFF** (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---
**DEFENDANT** (The person sued): You must do each of the following to protect your rights:

1. You must file a written response to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within 30 days of the date you were served with the *Summons* and *Complaint* ; .
2. You must have an adult other than yourself personally deliver or mail a copy of your written response to Plaintiff's attorney, or to Plaintiff if Plaintiff has no attorney; and
3. You must attend the first Case Management Conference.

   **Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**
---

**RULES AND FORMS:** You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), www.scselfservice.org (Select "Civil") or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm

**CASE MANAGEMENT CONFERENCE (CMC):** You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

---
Your Case Management Judge is: **Honorable James Emerson**    Department:   **19**

The 1st CMC is scheduled for: (Completed by Clerk of Court)

             Date: **DEC – 8 2009**  Time: **1:30pm**   in Department: **19**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

             Date: _____  Time: _____  in Department _____
---

**ALTERNATIVE DISPUTE RESOLUTION (ADR):** If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

**WARNING:** Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---
**CIVIL LAWSUIT NOTICE**
Form CV-5012
Rev. 07/01/08

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### *What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### *What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### *What are the main forms of ADR offered by the Court?*

< **Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

< Mediation may be appropriate when:
    < The parties want a non-adversary procedure
    < The parties have a continuing business or personal relationship
    < Communication problems are interfering with a resolution
    < There is an emotional element involved
    < The parties are interested in an injunction, consent decree, or other form of equitable relief

< **Neutral evaluation,** sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
    < The parties are far apart in their view of the law or value of the case
    < The case involves a technical issue in which the evaluator has expertise
    < Case planning assistance would be helpful and would save legal fees and costs
    < The parties are interested in an injunction, consent decree, or other form of equitable relief

-over-

SEP. 2.2009 4:57PM & A LEGAL SERVICE 6506974640 NO. 3133 P. 27

< Arbitration is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties, then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
> < The action is for personal injury, property damage, or breach of contract
> < Only monetary damages are sought
> < Witness testimony, under oath, needs to be evaluated
> < An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

< Civil Judge ADR allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
> < The parties have complex facts to review
> < The case involves multiple parties and problems
> < The courthouse surroundings would be helpful to the settlement process

< Special masters and referees are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.

Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

< Settlement conferences are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.

Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*

Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*
Santa Clara County Superior Court                    Santa Clara County DRPA Coordinator
ADR Administrator                                     408-792-2704
408-882-2530

---

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET/ CIVIL DIVISION**

CV-5003 REV 6/08

1  KARINEH KHACHATOURIAN (SBN 202634)
   Email: kkhachatourian@mintz.com
2  BRYAN J. SINCLAIR (SBN 205885)
   Email: bsinclair@mintz.com
3  JEFFREY M. RATINOFF (SBN 197241)
   Email: jratinoff@mintz.com
4  MINTZ LEVIN COHN FERRIS GLOVSKY
   AND POPEO P.C.
5  5 Palo Alto Square - 6th Floor
   3000 El Camino Real
6  Palo Alto, CA 94306-2155
   Telephone: (650) 251-7700
7  Facsimile: (650) 251-7739

8  Attorneys for Plaintiffs
   PHOENIX TECHNOLOGIES LTD.
9

10            SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF SANTA CLARA

12             (UNLIMITED CIVIL CASE) 0 9 C V 1 4 7 6 2 6

13  PHOENIX TECHNOLOGIES LTD., a
    Delaware corporation,                    Case No.
14
                     Plaintiff,              **COMPLAINT FOR (1) BREACH OF
15                                           CONTRACT, (2) INTERFERENCE WITH
            vs.                              CONTRACT, (3) TRADE SECRET
16  DEVICEVM, a Delaware corporation, and    MISAPPROPRIATION, (4) UNFAIR
    BENEDICT CHONG, an individual,           BUSINESS PRACTICES, 5)
17                                           CONVERSION; AND (6)
                     Defendants.             CONSTRUCTIVE TRUST**
18
19                                           **JURY TRIAL DEMAND**
20
21
22
23
24
25
26
27
28

1           Plaintiff Phoenix Technologies Ltd. ("Phoenix"), for its complaint against Defendants

2   DeviceVM, Inc. ("DeviceVM") and Benedict Chong ("Chong") (collectively, "Defendants").

3   alleges as follows:

4                                         **THE PARTIES**

5        1.     Phoenix Technologies Ltd. is a Delaware corporation with its principal place of

6   business in Milpitas, California.

7        2.     Founded in 1979, Phoenix designs, develops and supports system software and

8   related applications and services for personal computers ("PCs") and other computing devices.

9   Phoenix's products support and enable the compatibility, performance, connectivity, security and

10   management of the various components and technologies used in such devices. Phoenix established

11   industry leadership and effectively created the PC clone industry with its original BIOS product for

12   Compaq in 1983.

13        3.     Phoenix sells its products primarily to computer and component device

14   manufacturers. The company also provides training, consulting, maintenance and engineering

15   services to its customers.

16        4.     DeviceVM Inc. ("DeviceVM") is a Delaware corporation with its principal place of

17   business in San Jose, California. On information and belief, DeviceVM is a privately held software

18   company headquartered in Silicon Valley and with offices in Taiwan and China. On information

19   and belief, DeviceVM was founded in 2006 and is funded by various venture capital firms and

20   private investors based in China and the United States.

21        5.     On information and belief, DeviceVM markets, sells, distributes and offers for sale a

22   product named Splashtop®, which it alleges is an instant-on pre-boot environment, developed by

23   DeviceVM, that allows you to rapidly access the Web and key applications without the need to boot

24   your main operating system.

25        6.     Phoenix is informed and believes, and based thereon alleges that Chong, an

26   individual, works and resides in San Jose, California. Chong is a former Phoenix employee who,

27   Phoenix is informed and believes, and based thereon alleges, worked for and is still employed by

28   DeviceVM.

**BACKGROUND ALLEGATIONS**

7.   Chong worked at Phoenix for eight years, from approximately November 1996 until November 2004. On information and belief, Chong began working for DeviceVM on or about June 2007.

8.   In 1996, Phoenix hired Chong to play a significant role in Phoenix's engineering group responsible for Phoenix's development of core systems technology.

9.   Since Chong had access to Phoenix's most sensitive information, on or about November 1996, Phoenix presented and Chong signed an Employee Inventions and Proprietary Information Agreement (the "Agreement") as a condition of his employment by Phoenix. A true and correct copy of the Agreement is attached hereto as Exhibit A, and is incorporated herein by reference.

10.   The Agreement is valid and fully enforceable against Chong.

11.   Pursuant to Paragraph 3 of the Agreement, Chong agreed that all Innovations that: (a) are not developed entirely on Employee's own time; (b) are developed using equipment, supplies, facilities, confidential and proprietary information or trade secrets of Phoenix; (c) result from work performed by Employee for Phoenix; or (d) relate at the time of conception or reduction to practice to the business or the actual or demonstrably anticipated research or development of Phoenix, will be the sole and exclusive property of Phoenix. Chong agreed to assign to Phoenix any rights that he may have in any such Innovations and in any associated patents, patent applications, copyrights, trade secret rights, mask work rights, rights of priority and other intellectual property rights.

12.   Pursuant to Paragraph 4 of the Agreement, Chong agreed to assist Phoenix in every proper way to obtain for Phoenix and enforce patents, copyrights, mask work rights and other legal protections for Innovations belonging to Phoenix in any and all countries.

13.   Pursuant to Paragraph 5 of the Agreement, Chong agreed to irrevocably transfer and assign to Phoenix, and forever waive and agree never to assert, any right to claim authorship or be identified as the author of any Innovation, to object to any modification of, or other action in relation to, any Innovation, or any similar right, existing under judicial or statutory law of any

- 2 -
COMPLAINT

1   country in the world, or under any treaty.

2       14.     Pursuant to Paragraph 6 of the Agreement, Chong acknowledged that his
3   employment with Phoenix created a relationship of confidence and trust with respect to any
4   information of a confidential and proprietary or secret nature that was disclosed to him by Phoenix,
5   or that he learned in the course of employment by Phoenix and that related to the business, products,
6   supplier, customers, research or development of Phoenix and its products. Such Proprietary
7   Information includes but is not limited to Innovations, marketing plans, product plans, business
8   strategies, financial information, forecasts, personnel information, customer lists and any other
9   nonpublic technical or business information on that Employee knows or has reason to know
10  Phoenix would like to treat as confidential for any purpose, such as product development,
11  maintaining a competitive advantage, or avoiding undesirable publicity (hereinafter "Proprietary
12  Information").

13      15.     Pursuant to Paragraph 7 of the Agreement, Chong agreed at all times, both during
14  and after his employment, to keep all such Proprietary Information in confidence and trust, and
15  agreed to not use or disclose any such Proprietary Information without the written consent of
16  Phoenix, except as may be necessary to perform his duties as an employee of Phoenix and for
17  Phoenix's benefit.

18      16.     On information and belief, Chong has disclosed Phoenix Proprietary Information to
19  DeviceVM and DeviceVM has prosecuted patent applications containing inventions
20  misappropriated from Phoenix through Chong (the "Patents").

21      17.     On information and belief, based in part on the misappropriated Phoenix Proprietary
22  Information, DeviceVM has misled Phoenix's potential customers and the public about the true
23  nature of its business and the purported independent development of its Splashtop® product.

24      18.     Phoenix only became aware of DeviceVM's and Chong's unlawful activities in June
25  2009.

26  ///

27  ///

28  ///

- 3 -
COMPLAINT

1                               **FIRST CAUSE OF ACTION**

2                               **BREACH OF CONTRACT**

3                                  **(AGAINST CHONG)**

4           19.     Phoenix incorporates by reference the above paragraphs as though set forth fully

5    herein.

6           20.     As a condition of his employment, Chong signed the Agreement with Phoenix,

7    Phoenix has performed every promise and condition required to be performed by it pursuant to the

8    Agreement except any which were or would be excused or prevented by the breaches of Chong as

9    set forth herein.

10          21.     On information and belief, Chong breached his obligations to Phoenix under the

11   Agreement by, among other things, engaging in the following activities: (a) misappropriating

12   Proprietary Information of Phoenix and using this information to develop products for DeviceVM;

13   (b) failing to keep Proprietary Information of Phoenix in trust and confidence; (c) using and

14   disclosing Phoenix's Proprietary Information on behalf of DeviceVM without the written consent of

15   Phoenix; (d) failing to return and deliver Phoenix's Proprietary Information upon termination of

16   employment with Phoenix; (e) failing to inform the PTO and other parties that the specific

17   inventions that were conceived while Chong was employed at Phoenix, and which are the subject of

18   this Action, had already been assigned to Phoenix or were otherwise owned by Phoenix.

19          22.     By reason of the foregoing, Phoenix has been damaged in an amount to be proven at

20   trial.

21                              **SECOND CAUSE OF ACTION**

22              **INTERFERENCE WITH CONTRACT AGAINST DEVICEVM**

23          23.     Phoenix incorporates by reference the above paragraphs as though set forth fully

24   herein.

25          24.     At all times referenced herein the Agreement was and is a valid contract between

26   Phoenix and Chong.

27          25.     On information and belief, DeviceVM either knew or should have known of the

28   existence of the Agreement between Phoenix and Chong.

                                        - 4 -
                                     COMPLAINT

1  26.  On information and belief, DeviceVM induced Chong to breach the Agreement.

2  27.  By reason of DeviceVM's inducement, Phoenix has been damaged by the failure of

3  Chong to perform and complete his obligations in accordance with the terms of the Agreement, in a

4  sum to be proven at trial.

5  28.  DeviceVM's conduct has been willful, oppressive, and malicious and done with the

6  intent to injure DeviceVM and deprive Phoenix of its property and legal rights. Phoenix is therefore

7  entitled to exemplary and punitive damages in an amount sufficient to deter future wrongful

8  conduct.

9  ## THIRD CAUSE OF ACTION

10  ## CONSTRUCTIVE TRUST

11  29.  Phoenix incorporates by reference the above paragraphs as though set forth fully

12  herein.

13  30.  On information and belief, DeviceVM and Chong received a benefit from Phoenix

14  through its acquisition and retention of Phoenix's confidential and Proprietary Information and

15  inventions that Chong either assisted in conceiving and developing or had access to while employed

16  at Phoenix.

17  31.  DeviceVM and Chong's retention of these benefits is manifestly unjust, and is at the

18  expense of Phoenix. All of these benefits, including the inventions conceived by Chong, or with his

19  assistance, while employed at Phoenix, are owned by Phoenix pursuant to the Agreement with

20  Chong. Since these inventions and other confidential and Proprietary Information were exclusively

21  assigned to Phoenix under the Agreement, any retention of these inventions would be unjust.

22  32.  By virtue of the illegal activities by DeviceVM and Chong as alleged herein.

23  DeviceVM and Chong each hold certain property as a constructive trustee for Phoenix' benefit,

24  including but not limited to the following:

25  a.  The inventions claimed and/or disclosed in the Patents;

26  b.  All profits, royalties, and other benefits resulting from the exploitation of the

27  inventions claimed and/or disclosed products that incorporate the inventions conceived by Chong or

28  derived by Phoenix confidential information and Proprietary Information while employed at

- 5 -
COMPLAINT

Case4:09-cv-04697-CW Document1 Filed10/01/09 Page58 of 65

1 Phoenix, and the Patents, including all profits and royalties resulting from the manufacture, sale,

2 distribution, and marketing of each version of DeviceVM's products;

3     c. All software or other products derived from Defendants illegal activities;

4     d. Any United States or foreign patents or patent applications that claim priority

5 to the Patents and/or that are supported by the disclosures in the Patents; and

6     e. The confidential and/or Proprietary Information that was misappropriated

7 from Phoenix by DeviceVM and Chong.

8 **FOURTH CAUSE OF ACTION**

9 **UNFAIR BUSINESS PRACTICES AGAINST ALL DEFENDANTS**

10     33. Phoenix incorporates by reference the above paragraphs as though set forth fully

11 herein.

12     34. In the course of the wrongful conduct alleged herein, the Defendants, and each of

13 them, engaged in unfair and unlawful business practices in violation of the common law and

14 Sections 17200 et seq. of the California Business and Professions Code including, but not limited

15 to, the misappropriation of confidential and Proprietary Information of Phoenix.

16     35. The continuing activities of the Defendants in developing and exploiting the

17 confidential and Proprietary Information stolen from Phoenix constitute an on-going pattern and

18 practice of unfair competition.

19     36. The continuing activities of Defendants to misled Phoenix's customers and public by

20 representing that Splashtop® was independently developed through its own intellectual property

21 constitute an on-going pattern and practice of unfair competition.

22

23     37. By reason of this activity, Phoenix has been harmed in an amount to be proven at

24 trial, and the public misled about the true nature of DeviceVM's business. Injunctive relief is

25 necessary to prevent further irreparable injury to Phoenix, and to put an immediate halt to

26 DeviceVM and Chong's on-going practice and pattern of wrongful conduct. DeviceVM has

27 obtained benefits from its unlawful activity, for which DeviceVM is required to disgorge or to make

28 restitution.

1                         **FIFTH CAUSE OF ACTION**

2                              **CONVERSION**

3          38.    Phoenix incorporates by reference the above paragraphs as though set forth fully

4   herein.

5          39.    Phoenix is the owner of the confidential and Proprietary Information

6   misappropriated by DeviceVM and Chong as found in certain Patents. Under the Agreement and

7   Chong's legal obligations to Phoenix, this information is exclusively owned by Phoenix. Phoenix is

8   the owner of this information and has the exclusive right to possession of it.

9          40.    DeviceVM and Chong converted Phoenix's property by a series of wrongful acts.

10  On information and belief, Phoenix's property was converted by: (a) misappropriating the

11  confidential and Proprietary Information containing Phoenix's inventions; (b) taking the

12  confidential and Proprietary Information and the inventions contained therein to DeviceVM; and (c)

13  utilizing the confidential and Proprietary Information and the inventions contained therein to

14  prosecute patent applications for DeviceVM and to develop technology based on the information

15  and inventions.

16         41.    By converting the confidential and Proprietary Information and inventions that are

17  exclusively owned by Phoenix, DeviceVM and Chong have caused great damage to Phoenix. in an

18  amount to be proven at trial.

19         42.    DeviceVM's conduct has been willful, oppressive, and malicious and done with the

20  intent to injure DeviceVM and deprive Phoenix of its property and legal rights. Phoenix is therefore

21  entitled to exemplary and punitive damages in an amount sufficient to deter future wrongful

22  conduct.

23                         **SIXTH CAUSE OF ACTION**

24      **TRADE SECRET MISAPPROPRIATION AGAINST ALL DEFENDANTS**

25         43.    Phoenix incorporates by reference the above paragraphs as though set forth fully

26  herein.

27         44.    Upon information and belief, Defendants have misappropriated, and are using

28  Phoenix's trade secret information related to Phoenix's technology and business, without Phoenix's

- 7 -
COMPLAINT

1   consent, and in order to compete directly with Phoenix.

2       45.    Defendants' conduct violates California's Uniform Trade Secrets Act.

3       46.    Phoenix has been irreparably harmed.

4       47.    Phoenix has suffered damages in an amount to be proven at trial.

5                                  **PRAYER FOR RELIEF**

6   Wherefore, Phoenix prays judgment against Defendants as follows:

7       A.    For compensatory damages against Defendants to be proven at trial;

8       B.    For disgorgement and restitution from Defendants to be proven at trial;

9       C.    An award to Phoenix of punitive damages in a sum according to proof;

10      D.    An award to Phoenix of its costs, expenses and reasonable attorneys' fees incurred in

11  bringing and prosecuting this action, pursuant to the Agreement;

12      E.    An order directing the Defendants to correct the records of the PTO to reflect that all

13  intellectual property rights to the inventions conceived by Chong are owned by Phoenix, including

14  but not limited to all rights to all patent applications or patents arising from Phoenix's confidential

15  or Proprietary Information.

16      F.    A declaration that Phoenix was assigned all rights to the inventions conceived by

17  Chong while employed at Phoenix under the terms of the Agreement, and therefore that these

18  inventions are exclusively owned by Phoenix.

19      G.    Preliminarily and permanently enjoin the Defendants from:

20          (1)    disclosing, obtaining or using, or attempting to disclose, obtain or use any of

21  Phoenix's confidential or Proprietary Information misappropriated from Phoenix,

22          (2)    disseminating or destroying any documents, material or things now in their

23  possession that originated at Phoenix, that belong to Phoenix, or that embody or are derived from

24  Phoenix's confidential or Proprietary Information, or that are otherwise relevant to the subject

25  matter of this lawsuit,

26          (3)    manufacturing, selling, offering to sell, licensing, creating source code for,

27  marketing, or advertising, any product that incorporates or performs any of the inventions

28  misappropriated from Phoenix, or that is derived from any inventions or confidential or Proprietary

                                        - 8 -
                                     COMPLAINT

1    Information misappropriated by the Defendants.

2         H.        An order imposing a constructive trust for the benefit of Phoenix over:

3              (1)      the inventions claimed and/or disclosed in the Patents, and all DeviceVM

4    products based on and/or incorporating those inventions;

5              (2)      all profits, royalties, and other benefits resulting from the exploitation of the

6    inventions claimed and/or disclosed in the Patents, including all profits and royalties resulting from

7    the manufacture, sale, distribution, and marketing of each version of DeviceVM's products,

8              (3)      all software or other products that incorporate the inventions conceived by

9    Chong while employed at Phoenix, and any products derived from DeviceVM's illegal activities;

10             (4)      any United States or foreign patents or patent applications that claim priority

11   to the Patents and/or that are supported by the disclosures in the Patents,

12             (5)      the confidential and/or Proprietary Information that was misappropriated

13   from Phoenix by DeviceVM and Chong,

14             (6)      any profits, revenues, or other benefits obtained by the Defendants as a result

15   of their infringement of the Patents; and

16        I.        For such other and further relief as may be awarded at the trial of this matter

17   according to proof.

18   Dated: July 17, 2009                      Respectfully submitted,

19                                             MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.

20

21                                             By:   KARINEH KHACHATOURIAN
                                                     BRYAN J. SINCLAIR
22                                                   JEFFREY M. RATINOFF

23                                             Attorneys for Plaintiff,
                                               PHOENIX TECHNOLOGIES LTD.
24

25

26
     4668520v.4
27

28

                                            - 9 -
                                         COMPLAINT

Exhibit A

**PHOENIX TECHNOLOGIES, LTD.**
**California Operations**
**Employee Invention Assignment and**
**Proprietary Information Agreement**

**Benedict Chong**
**(Hand Delivered)**

In consideration of my employment or continued employment by Phoenix Technologies Ltd. ("Phoenix"), I hereby represent and agree as follows:

1. Employee understands that Phoenix is engaged in a continuous program of research, development, production and marketing in connection with its business and that, as an essential part of Employee's work with Phoenix, Employee is expected to make new contributions to and create inventions of value for Phoenix.

2. Employee agrees to promptly disclose in writing in confidence to Phoenix all inventions, improvements, and other innovations of any kind, whether or not patentable or copyrightable or protectable as trade secrets or mask works, that are made or conceived or first reduced to practice or created by Employee, either alone or jointly with others, during the period of Employee's employment, whether or not in the course of such employment ("Innovations"). Examples of Innovations include but are not limited to original works of authorship, computer programs, formulas, processes, databases, trade secrets, mechanical and electronic hardware, computer languages, user interfaces, documentation, marketing and new product plans, production processes, packaging and marketing techniques, and improvements to anything.

3. Employee agrees that all Innovations that (a) are not developed entirely on Employee's own time, (b) are developed using equipment, supplies, facilities or trade secrets of Phoenix, (c) result from work performed by Employee for Phoenix, or (d) relate at the time of conception or reduction to practice to the business or the actual or demonstrably anticipated research or development of Phoenix, will be the sole and exclusive property of Phoenix, and Employee hereby assigns to Phoenix any rights that Employee may have in any such Innovations and in any associated patents, patent applications, copyrights, trade secret rights, mask work rights, rights of priority and other intellectual property rights.

Employee is hereby notified by Phoenix that the provisions of this Section 3 do not apply to any Innovation that qualifies fully under the provisions of Section 2870 of the California Labor Code, which states as follows:

(a) ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER:

(1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUAL OR DEMONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER; OR

(2) RESULTS FROM ANY WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER.

1

(b) TO THE EXTENT A PROVISION IN ANY EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER SUBDIVISIONS (a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.

Accordingly, Employee may request a written waiver from his or her manager which will act to formally acknowledge that Phoenix has no right, title or interest in Employee's Innovations that (a) are developed entirely on Employee's own time, (b) are developed using equipment, supplies, facilities or trade secrets not belonging to Phoenix, (c) result from work not performed by Employee for Phoenix, or (d) relate at the time of conception or reduction to practice to no business or actual or demonstrably anticipated research or development of Phoenix. Such written waiver must be signed by Employee's manager and Phoenix's Corporate Counsel and will be placed in Employee's personnel file with an original copy retained by Employee.

4. Employee agrees to assist Phoenix in every proper way to obtain for Phoenix and enforce patents, copyrights, mask work rights and other legal protections for Innovations belonging to Phoenix in any and all countries. Employee will execute any documents that Phoenix may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights and other legal protections. Employee's obligations under this Section will continue beyond the termination of Employee's employment with Phoenix, provided that Phoenix will compensate Employee at a reasonable rate after such termination for time actually spent by Employee at Phoenix's request on such assistance.

5. Employee hereby irrevocably transfers and assigns to Phoenix, and forever waives and agrees never to assert, any and all "Moral Rights" (as defined below) that Employee may have in or with respect to any Innovation. "Moral Rights" mean any right to claim authorship or be identified as the author of any Innovation, to object to any modification of, or other action in relation to, any Innovation, or any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right."

6. Employee understands that Employee's employment with Phoenix creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to Employee by Phoenix or that Employee may learn in the course of employment by Phoenix and that relates to the business, products, supplier, customers, research or development of Phoenix and its products ("Proprietary Information"). Such Proprietary Information includes but is not limited to Innovations, marketing plans, product plans, business strategies, financial information, forecasts, personnel information, customer lists and any other nonpublic technical or business information on that Employee knows or has reason to know Phoenix would like to treat as confidential for any purpose, such as maintaining a competitive advantage or avoiding undesirable publicity.

7. At all times, both during and after Employee's employment, Employee will keep all such Proprietary Information in confidence and trust, and will not use or disclose any of such Proprietary Information without the written consent of Phoenix, except as may be necessary to perform Employee's duties as an employee of Phoenix and for Phoenix's benefit. Upon termination of Employee's employment with Phoenix, Employee will promptly deliver to Phoenix all documents and materials of any nature pertaining to Employee's work with Phoenix, and Employee will not take with Employee any documents or materials or copies thereof containing any Proprietary Information.

8. Employee represents that Employee's performance of this Agreement and of Employee's duties as an employee with Phoenix will not breach any invention assignment or proprietary information or similar

agreement with any former employer or other party. Employee represents that employee will not bring with Employee to Phoenix or use in the performance of Employee's duties for Phoenix any documents, materials or information of a former employer that are not generally available to the public.

9. During, and for a period of one (1) year after termination of, Employee's employment with Phoenix, Employee will not directly or indirectly attempt to call on, solicit or take away suppliers, customers, employees or consultants of Phoenix for Employee's own benefit or for anyone else's.

10. Employee hereby authorizes Phoenix to notify others, including but not limited to customers of Phoenix and Employee's future employers, of the terms of this Agreement and Employee's responsibilities hereunder.

11. In the event of any violation of this Agreement by Employee, and in addition to any relief or remedies to which Phoenix may otherwise be entitled, Employee agrees that Phoenix shall have the right to an immediate injunction, and shall have the right to recover the reasonable attorneys' fees and court costs expended in connection with any litigation instituted to enforce this Agreement. **"No waiver of any condition or covenant in this Agreement or failure to exercise a right or remedy shall be considered to imply or constitute a further waiver of the same or any other covenant, condition, right, or remedy."**

**12. "If any provision of this Agreement is declared invalid by any tribunal, such provision shall be deemed automatically adjusted to conform to the requirements for validity as declared at such time and, as so adjusted, shall be deemed a provision of this Agreement as though originally included herein. If the provision invalidated is of such a nature that it cannot be so adjusted, the provision shall be deleted from this Agreement as though it had never been included herein. In either case, the other provisions of this Agreement shall remain in effect."**

13. Employee understands and agrees that this Agreement does not constitute a contract of employment or obligate Phoenix to employ employee for any stated period of time. Employee understands that Employee's employment with Phoenix is at will, and may be terminated by Phoenix at any time and for any reason, with or without cause.

This Agreement shall be effective as of the first day of Employee's employment with Phoenix: namely: end August , 1996. or for current employees: on _____, 1996.

Signature of Employee:

Accepted and acknowledged by Phoenix Technologies Ltd.:

Signature: Tina Randhaw Title: Staffing Coord 7/24/03
(Please Print)

3