IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PHOENIX TECHNOLOGIES LTD.,

    Plaintiff,

  v.

DEVICEVM and BENEDICT CHONG,

    Defendants.
    _____/

No. C 09-04697 CW

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

    This case arises from Defendants' alleged misappropriation of trade secrets and other proprietary information from Plaintiff. Defendants DeviceVM and Benedict Chong move, pursuant to Federal Rule of Civil Procedure 12(b)(6) and the California Uniform Trade Secrets Act (CUTSA), Cal. Civ. Code §§ 3426-3426.11, to dismiss Counts 2, 3, 4 and 5 of the First Amended Complaint (FAC) as pre-empted by CUTSA and moves to dismiss Count Three for failure to state a claim upon which relief can be granted. Plaintiff opposes the motion. Having considered the papers filed by the parties, the Court grants in part Defendants' motion to dismiss and denies it in part.

## BACKGROUND

    The following facts are taken from Plaintiff's FAC. Plaintiff Phoenix Technologies, founded in 1979, designs, develops and

supports system software and related applications and services for personal computers (PCs) and other computing devices.  Plaintiff's products support the performance, compatibility, security and management of the various components and technologies used in PCs.  Defendant DeviceVM, founded in 2006, markets, sells and distributes a product named Splashtop which is advertised as an instant-on pre-boot environment that allows a user rapidly to access the internet and key applications without the need to boot the main operating system.  Defendant Chong worked for Plaintiff from November, 1996 until November, 2004 as a principal software engineer and team lead and played a significant role in the development of Plaintiff's core systems technology.  In November, 1996, as a condition of Chong's employment, Plaintiff asked him to sign an Employee Inventions and Proprietary Information Agreement (the Agreement).  Chong signed the Agreement; it is attached as Exhibit A to the FAC.

The Agreement provided, in relevant part:

> Employee agrees that all Innovations that (a) are not developed entirely on Employee's own time, (b) are developed using equipment, supplies, facilities or trade secrets of Phoenix, (c) result from work performed by Employee for Phoenix, or (d) relate at the time of conception or reduction to practice to the business or the actual or demonstrably anticipated research or development of Phoenix, will be the sole and exclusive property of Phoenix, and Employee hereby assigns to Phoenix any rights that Employee may have in any such innovations and in any associated patents, patent applications, copyrights, trade secret rights, mask work rights, rights of priority and other intellectual property rights.

Agreement at ¶ 3.

In the Agreement, "Innovations" is defined as:

> inventions, improvements, and other innovations of any kind, whether or not patentable or copyrightable or protectable as trade secrets or mask works, that are made or conceived or first reduced to practice or created by

2

>Employee either alone or jointly with others, during the period of Employee's employment, whether or not in the course of such employment. Examples of Innovations are: original works of authorship, computer programs, formulas, processes, databases, trade secrets, mechanical and electronic hardware, computer languages, user interfaces, documentation, marketing and new product plans, production processes, packaging and marketing techniques, and improvements to anything.

Agreement at ¶ 2.

In 2001, Plaintiff announced the availability of a product line called FirstView Connect which contained, among other things, an "instant on" web browser that provided instant-on access to the internet and browsing capability for internet television, internet video players, interactive screen phones and game consoles. Chong was involved in aspects of the development of the FirstView Connect products. In 2002, Plaintiff developed a product called FirstSight which is a graphic interface used to access applications residing on the PC's hard drive. In 2003, Plaintiff developed a boot loader methodology which was disclosed in United States Patent Application No. 10/842,780 ('780 Application) and which identifies Chong as the first named inventor. Also in 2003, Plaintiff applied for a patent on another method which could rapidly boot a second operating system from a first operating system. Patent Application No. 10/950,199 ('199 Application). In 2003, Plaintiff introduced into the market a product called FirstWare Assistant which provided instant-on access to personal information management data from Microsoft Outlook without the need to launch the Windows operating system. Chong was the team lead for the engineers working on the FirstWare Assistant product line.

Chong's last day of employment with Plaintiff was November 19, 2004. In January, 2007, Chong began working for DeviceVM as a

3

1  Director of Program Management.  On February 15, 2007, DeviceVM
2  filed Provisional Patent Application no. 60/890,121 ('121
3  Provisional Application), entitled, "Instant-On Appliances."  Chong
4  is a named inventor on the '121 Provisional Application.  On July
5  2, 2007, DeviceVM filed Patent Application no. 11/772,700,
6  entitled, "Method and Apparatus for Virtualization of Appliances"
7  ('700 Application).  Chong is a named inventor on the '700
8  Application, as well as on other patent applications filed by
9  DeviceVM.

10      Plaintiff alleges that Chong has disclosed its proprietary
11 information to DeviceVM and DeviceVM has used this proprietary
12 information in various patent applications.  Plaintiff also alleges
13 that DeviceVM has misled Plaintiff's potential customers and the
14 public about the true nature of its business and the purported
15 independent development of DeviceVM's Splashtop product.

16      Based upon these allegations, Plaintiff asserts the following
17 causes of action: (1) breach of contract, against Chong;
18 (2) interference with contract, against DeviceVM; (3) constructive
19 trust, against both Defendants; (4) unfair business practices in
20 violation of the common law and California Business Code § 17200 <u>et</u>
21 <u>seq.</u>, against both Defendants; (5) conversion, against both
22 Defendants; and (6) misappropriation of trade secrets, against both
23 Defendants.  Plaintiff seeks compensatory and punitive damages,
24 disgorgement and restitution, declaratory and injunctive relief and
25 the imposition of a constructive trust over various assets owned by
26 DeviceVM.

LEGAL STANDARD

28      A complaint must contain a "short and plain statement of the

4

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

5

DISCUSSION

I.   Preemption by CUTSA

Defendants argue that Plaintiff's claims for interference with contract, violation of the UCL, conversion and constructive trust are preempted by CUTSA because they are based on the same allegations underlying the trade secret claim. Citing California Civil Code § 3426.7(b)(2), Plaintiff responds that its claims are based on the theft of other protectable confidential and proprietary information in addition to trade secrets and, thus, fall under the exemption from CUTSA preemption for civil remedies not based upon misappropriation of a trade secret. Plaintiff also argues that, because CUTSA preemption requires a factual analysis of the claims, it is premature to dismiss any of the claims at the pleading stage.

A.   Legal Framework

California's legislature enacted CUTSA in 1984 "to provide unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law." American Credit Indem. Co. v. Sacks, 213 Cal. App. 3d 622, 630 (1989) (internal quotation marks omitted). It defines a "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable

6

under the circumstances to maintain its secrecy. Cal. Civ. Code § 3426.1(d).

"CUTSA preempts common law claims that are based on misappropriation of a trade secret." Ali v. Fasteners for Retail, Inc., 544 F. Supp. 2d 1064, 1070 (E.D. Cal. 2008) (internal quotation marks omitted). However, CUTSA exempts certain claims from the scope of its pre-emption: it "does not affect (1) contractual remedies, whether or not based upon misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." Cal. Civ. Code § 3426.7(b).

"Courts have held that where a claim is based on the 'identical nucleus' of facts as a trade secrets misappropriation claim, it is preempted by [C]UTSA." Silicon Image, Inc. v. Analogix Semiconductor, Inc., 2007 WL 1455903, at *9 (N.D. Cal.). "The preemption inquiry for those causes of action not specifically exempted by § 3426.7(b) focuses on whether other claims are no more than a restatement of the same operative facts supporting trade secret misappropriation. . . . If there is no material distinction between the wrongdoing alleged in a [C]UTSA claim and that alleged in a different claim, the [C]UTSA preempts the other claim." Convolve, Inc. v. Compaq Computer Corp., 2006 WL 839022, at *6 (S.D.N.Y.) (applying California law).

In support of its argument that its claims should not be preempted at the pleading stage, Plaintiff cites First Advantage Background Servs. Corp. v. Private Eyes, Inc., 569 F. Supp. 2d 929, 942 (N.D. Cal. 2008), and Think Village-Kiwi, LLC v. Adobe Sys.

7

1  Inc., 2009 WL 902337, *2-3 (N.D. Cal.).  In addressing a motion to
2  dismiss tort claims based on CUTSA preemption, the court in First
3  Advantage reasoned that, if the alleged confidential information
4  upon which the claims were based proved to be protectable trade
5  secrets, the claims would be preempted, but, to the extent that the
6  claims were based on confidential information that was not a trade
7  secret, the claims could go forward.  569 F. Supp. 2d at 942.  The
8  court in Think Village-Kiwi adopted the reasoning in First
9  Advantage and held that, on a motion to amend, amendment of claims
10 for misappropriation and breach of confidence was not futile
11 because it was possible for the plaintiff to allege that the
12 information in question was not based on a trade secret.  2009 WL
13 902337 at *2-3.
14      Defendants argue that First Advantage and Think Village-Kiwi
15 have been superseded by the recent California case K.C. Multimedia,
16 Inc. v. Bank of Am. Tech. & Operations, Inc., 171 Cal. App. 4th 939
17 (2009).  In K.C. Multimedia, the court examined the section of
18 CUTSA at issue here, § 3426.7(b)(2), and explained that, although
19 preemption by the statute is to be interpreted broadly, whether a
20 claim is based on trade secret misappropriation is largely a
21 factual issue.  Id. at 954.  The court rejected cases from other
22 circuits that employ a "something more" test that allows plaintiffs
23 to maintain separate causes of action to the extent there is more
24 to their factual allegations than the mere misuse or
25 misappropriation of trade secrets.  Id. at 956-57.  Although the
26 plaintiff conceded that the allegations in the complaint were based
27 on the misappropriation of trade secrets, before ruling on
28 preemption, the court undertook a factual analysis to determine

8

whether the gravamen of each claim rested on the misappropriation of trade secrets. Id. at 959-64.

Thus, although K.C. Multimedia emphasized the broad reach of CUTSA preemption, it does not undermine the analytic framework enunciated in First Advantage and Think Village-Kiwi allowing claims to go forward where the gravamen of the claims does not rest on the misappropriation of trade secrets.

B. Tort and UCL Claims

Plaintiff argues that, because the tort and UCL claims are based on Defendants' diversion and/or wrongful use of Plaintiff's "Proprietary Information," as defined in the Agreement, these claims are not limited to trade secrets and, thus, are not preempted.

Each of the claims at issue in this motion alleges the misappropriation of Phoenix's confidential and Proprietary Information. See FAC ¶ 21 (breach of contract), FAC ¶¶ 24-27 (interference with contract); ¶ 30 (constructive trust), ¶ 34 (UCL) and ¶ 39 (conversion). In paragraph six of the Agreement, Proprietary Information is defined as "the business, products, supplier, customers, research or development of Phoenix and its products." Paragraph six further explains that Proprietary Information "includes, but is not limited to Innovations, marketing plans, product plans, business strategies, financial information, forecasts, personnel information, customer lists and other nonpublic technical or business information that Employee knows or has reason to know Phoenix would like to treat as confidential for any purpose . . . ."

Defendants argue that, even though the allegations refer to

9

Proprietary Information, they are based on the same operative nucleus of facts as the trade secrets claim. The trade secrets claim alleges, "Defendants have misappropriated, and are using Phoenix's trade secret information related to Phoenix's technology and business, without Phoenix's consent, and in order to compete directly with Phoenix." FAC at ¶ 44. To the extent that the trade secrets claim does not allege that it is based on Defendants' misappropriation of all of its Proprietary Information, the allegations in the tort and UCL claims are not based on the same operative of nucleus facts as the trade secrets claim. Furthermore, because the Agreement specifically defines "Proprietary Information" to include forms of protected property interests other than trade secrets, Defendants were on notice that they could be liable for claims in addition to trade secrets violations.[1]

Plaintiff also argues that it may plead alternate theories of recovery so that it could plead the tort and UCL claims in addition to the trade secrets claim. To the extent these claims are not based on appropriation of trade secrets, they may go forward.

Although most of the allegations in the FAC supporting Plaintiff's UCL and tort claims concern Defendants' misuse of information that appears to fall within the definition of a "trade

---

[1] Defendants also argue that <u>Air Defense v. AirTight Networks, Inc.</u>, 2006 WL 2092053, at *3-6 (N.D. Cal.), requires dismissal at the pleadings stage. However, this opinion is specifically designated, "NOT FOR CITATION." Although citation to district court opinions in an electronic database is permitted, any opinion that is specifically designated, "NOT FOR CITATION," may not be cited to the Court, except when relevant under the doctrines of law of the case, <u>res judicata</u>, or collateral estoppel. <u>See</u> Civ. Local R. 3-4(e). Thus, this opinion cannot be considered.

10

secret" under CUTSA, the Court will construe those claims as based on those facts that are not part of the nexus that forms the basis for their CUTSA claim. If, following discovery, there is not sufficient evidence to support these claims based on a distinct nexus of facts, Defendants may move for summary judgment at that time.

II. Constructive Trust

Defendants move to dismiss Plaintiff's claim for constructive trust on the ground that it is a type of equitable remedy, not a cause of action, citing Batt v. City and County of San Francisco, 155 Cal. App. 4th 65, 82 (2007), and Glu-Fold, Inc. v. Slautterback Corp., 82 Cal. App. 4th 1018, 1023 n.3 (2000).

Plaintiff acknowledges that many California cases hold that a constructive trust is a remedy, but contends that the law is unsettled. However, even the cases Plaintiff cites indicate that a constructive trust is a remedy. See Weiss v. Marcus, 51 Cal. App. 3d 590, 600 (1975) (stating claim for constructive trust is an equitable remedy); Cassirer v. Kingdom of Spain, 461 F. Supp. 2d 1157, 1177-78 (C.D. Cal. 2006), rev'd in part on other grounds, 580 F.3d 1048 (9th Cir. 2009) (relying on In re Real Estate Assocs. P'ship Litig., 223 F. Supp 2d 1109, 1140 (C.D. Cal. 2002), which stated constructive trust is a remedy); Delano Farms Co. v. Cal. Table Grape Comm'n, 623 F. Supp. 2d 1144, 1182 (E.D. Cal. 2009) (declining to dismiss constructive trust claim only because the substantive claims on which it was dependent were not dismissed).

The Court concludes that a constructive trust is not a claim, but a remedy.

Defendants argue that, even as a remedy, Plaintiff's request

11

for a constructive trust fails because it is not an appropriate remedy for a breach of contract or trade secrets claim.  As explained above, Plaintiff's non-trade secret tort and UCL claims survive Defendants' motion to dismiss.  Imposition of a constructive trust may be an appropriate remedy for these claims.  See Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga, 175 Cal. App. 4th 1306, 1332 (2009) (constructive trust may be imposed when there is a res, the plaintiff has a right to the res, and the defendant acquired the res by a wrongful act); Taylor v. Fields, 178 Cal. App. 3d 653, 665 (1986) (constructive trust may be imposed in practically any case where there has been a wrongful acquisition of property to which another is entitled).  In lieu of requiring Plaintiff to amend merely to allege the constructive trust claim as a remedy, the Court will construe it as a remedy.

CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part.  The constructive trust allegation is dismissed as a claim, but is construed as a remedy. The UCL and tort claims may proceed to the extent that they are not predicated on the misappropriation of trade secrets.  A case management conference is scheduled for April 13, 2010 at 2 pm.

IT IS SO ORDERED.

Dated: December 8, 2009

CLAUDIA WILKEN
United States District Judge