IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PHOENIX TECHNOLOGIES, LTD.,

    Plaintiff,

v.

DEVICEVM, INC., et al.,

    Defendants.

No. 09-4697-EDL

**ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Plaintiff Phoenix Technologies designs, develops and supports system software and related applications for personal computers. Plaintiff has many products, including Hyperspace, a software product that provides instant-on access to a PC for certain applications without having to boot up Windows. Defendant DeviceVM is a software company that sells a similar product, Splashtop. Defendant Chong is Plaintiff's former employee, who now works for DeviceVM.

Plaintiff has sued Defendants alleging misappropriation of trade secrets and violation of several other state laws. Phoenix's claims are based on the allegations that not long after Chong joined DeviceVM, DeviceVM filed a series of patent applications listing Chong as the inventor on inventions similar to those that were allegedly conceived by or based upon work performed by Chong while he was working for Plaintiff.

On November 16, 2009, Plaintiff served its identification of trade secrets pursuant to California Code of Civil Procedure Section 2019.210, which states:

> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . . before commencing discovery relating to the trade secret, the party alleging the misappropriation shall *identify the trade secret with reasonable particularity* subject to any orders that may be appropriate under Section 3426.5 of the Civil Code.

Cal. Code Civ. Proc. § 2019.210 (emphasis added). A trade secret is "information, including a

formula, pattern, compilation, program, device, method, technique, or process, that: (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1(d).

On December 21, 2009, Defendants filed this motion seeking a protective order against the commencement of discovery and requiring Plaintiff to identify its trade secrets with more particularity pursuant to Section 2019.210.  On January 19, 2010, Plaintiff opposed the motion and served an amended identification of trade secrets, attaching almost one thousand pages of supporting documentation.  On February 2, 2010, Defendant filed a reply to the opposition, arguing that Plaintiff provided too much information with the amended identification and that Defendants could not identify the trade secrets.  At the February 16, 2010 hearing, the Court gave Plaintiff leave to file an expert declaration regarding whether Plaintiff's First Amended Identification of Trade Secrets satisfied the requirements of Section 2019.210.  Plaintiff filed the declaration of Brian Berg on February 26, 2010.  The Court gave Defendants until March 3, 2010 to object to Plaintiff's expert declaration solely on the issue of the qualifications of the expert, but Defendants did not file any objection to the Berg declaration.

The purpose of Section 2019.210 is as follows:

> First, it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints. Second, it prevents plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets. [Citations.] Third, the rule assists the court in framing the appropriate scope of discovery and in determining whether plaintiff's discovery requests fall within that scope. [Citations.] Fourth, it enables defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation. [Citations.]

Computer Economics, Inc. v. Gartner Group, Inc., 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999).  "The letter and spirit of section 2019.210 require the plaintiff, subject to an appropriate protective order, to identify or designate the trade secrets at issue with sufficient particularity to limit the permissible scope of discovery by distinguishing the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade." Advanced Modular Sputtering, Inc.

2

1  v. Superior Court, 132 Cal.App.4th 826, 834 (2005) (quotation marks omitted).  However, the

2  statutory standard under Section 2019.210 is flexible:

> "Reasonable particularity" mandated by section 2019.210 does not mean that the party alleging misappropriation has to define every minute detail of its claimed trade secret at the outset of the litigation. Nor does it require a discovery referee or trial court to conduct a miniature trial on the merits of a misappropriation claim before discovery may commence. Rather, it means that the plaintiff must make some showing that is reasonable, i.e., fair, proper, just and rational [citation omitted], under all of the circumstances to identify its alleged trade secret in a manner that will allow the trial court to control the scope of subsequent discovery, protect all parties' proprietary information, and allow them a fair opportunity to prepare and present their best case or defense at a trial on the merits. [citation omitted].
>
> The degree of "particularity" that is "reasonable" will differ, depending on the alleged trade secrets at issue in each case. Where, as here, the alleged trade secrets consist of incremental variations on, or advances in the state of the art in a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field.
>
> But it remains true that, at this very preliminary stage of the litigation, the proponent of the alleged trade secret is not required, on pain of dismissal, to describe it with the greatest degree of particularity possible, or to reach such an exacting level of specificity that even its opponents are forced to agree the designation is adequate. We question whether any degree of specificity would satisfy that lofty standard. What is required is not absolute precision, but "reasonable particularity."

Advanced Modular, 132 Cal.App.4th at 835-36.  Finally, a trade secret identification should be liberally construed and reasonable doubts about its sufficiency should be resolved in favor of allowing discovery to go forward.  See Brescia v. Angelin, 172 Cal.App.4th 133, 149 (2009).

In Brescia, the plaintiff claimed that several parties misappropriated his trade secrets in the formula and manufacturing processes for a high protein low carbohydrate pudding.  See id. at 140-41.  The trial court found that the trade secret identification was insufficient because the "submission was silent on whether his alleged trade secrets were known to skilled persons in the field."  See id. at 142 (relying on Advance Modular).  The appellate court reversed, finding that the identification of trade secrets was adequate to permit the defendant "to investigate whether his alleged trade secrets were within the public domain and prepare a defense."  See id. at 151.  The court held that:

> [s]ection 2910.210 does not require in every case that a trade secret claimant explain how the alleged trade secret differs from the general knowledge of skilled persons in the field to which the secret relates.  Rather, such an explanation is required only when, given the nature of the alleged secret or the technological field in which it

3

1
2
3
4
> arises, the details provided by the claimant to identify the secret are themselves inadequate to permit the defendant to learn the boundaries of the secret and investigate defenses or to permit the court to understand the designation and fashion discovery. Further, the trade secret designation is to be liberally construed, and reasonable doubts regarding its inadequacy are to be resolved in favor of allowing discovery to go forward.

5 Id. at 138. The Brescia court concluded: "The court [in Advanced Modular] was not creating a
6 requirement for all cases, divorced from the particularity requirement itself, of explaining how the
7 trade secret differs from prior art." See id. at 147. Further, the court stated that the "essential lesson
8 of Advanced Modular is the flexibility of the reasonable particularity standard." Id. at 148.

9      In Perlan Therapeutics v. Superior Court, 178 Cal.App.4th 1333 (2009), the court addressed
10 alleged misappropriation by a former employee where the plaintiff identified trade secrets relating to
11 a nasal spray. See id. at 1337. The trade secret identification consisted of four pages of text,
12 repeating much of what was available in the complaint and providing technical information that was
13 publicly available. The court noted that the level of specificity required by Advanced Modular and
14 provided by Brescia was not required in every case, but that in Perlan, the trade secret identification
15 was insufficient because the plaintiff did not segregate its alleged trade secrets, did not clearly
16 explain how the secrets differed from publicly available information, included a large amount of
17 surplusage, and referenced hundreds of pages of extra documents. See id. at 1352. However, the
18 court stated: "This is not to say that a court would abuse its discretion if it allowed a section 2019.210
19 statement to include such surplusage and voluminous attachments." Id. at 1350, n.11.

20      Here, Defendants' expert, John Kelly, opines that none of the eight trade secrets identified
21 by Plaintiff meets the reasonable particularity standard. Dr. Kelly, who is an expert in computer
22 science and engineering, testified that many of the documents provided with the amended disclosures
23 describe technology that cannot be a trade secret because it is obvious and/or generally known within
24 the industry, and even if some documentation is non-public, there is no indication which information
25 constitutes the trade secrets. As an example of the former, Dr. Kelly points to document
26 PTEC0000661, which states that with the exception of one routine, the software "does not use any
27 non-obvious algorithms." See Kelly Decl. ¶ 36; see also Kelly Decl. ¶ 40 (stating that with regard to
28 the term "EPG designs," one cited document (PTEC0000184-196) contains descriptions of screen

4

layouts and various panels, some of which will be visible to the user, so "to the extent the elements on the screen and their organization is similar to the BIOS interface screens visible on standard PCs, it is not clear these are trade secrets"). As an example of the latter, Dr. Kelly states that after reviewing all of the documentation cited for each trade secret, he cannot identify precisely what Plaintiff alleges are its trade secrets. See, e.g., Kelly Decl. ¶¶ 14-16 (with respect to save-and-restore trade secret, stating that it is not clear that all of the documents cited by Plaintiff contain algorithms, architecture, methods of implementation, data structures, coding techniques and/or program code related to the save-and-restore methodology, and that it is not clear that they are proprietary if they are disclosed, and that the concept of save-and-restore is well-known in the industry).

Dr. Kelly's report was not submitted until the date that Defendants' reply brief was filed. Therefore, at the hearing, the Court gave Plaintiff leave to respond by filing an expert declaration supporting its trade secret identification. On February 26, 2010, Plaintiff filed the declaration of Brian Berg. Mr. Berg, who is an expert in computer software, opined that the documents incorporated into Plaintiff's First Amended Identification of Trade Secrets contain Plaintiff's trade secrets and Plaintiff's confidential proprietary information. See Berg Decl. ¶ 19. He created a table correlating specific pages from the documents attached to the Identification of Trade Secrets and Plaintiff's trade secrets. See Berg Decl. ¶ 19; Ex. B. Mr. Berg's opinion is that Exhibit B, when read in connection with the documents incorporated into the First Amended Identification of Trade Secrets, identifies Plaintiff's trade secrets with reasonable particularity to one of ordinary skill in the art such that one could discern what Plaintiff is currently claiming to be trade secret information. See Berg Decl. ¶ 20.

At this stage of the proceedings, where experts disagree on the sufficiency of a party's trade secret identification pursuant to Section 2019.210, "it is appropriate to recognize the existence of this credible dispute, but not necessarily to resolve it." Advanced Modular, 132 Cal.App.4th at 836. In Advanced Modular, the defendant and its experts contended that the plaintiff's trade secrets were well-known in the industry and that they were described in a vague and overbroad manner. See id. at 836. The plaintiff and its experts disagreed. See id. The Advanced Modular court concluded that: "Where, as here, credible experts declare that they are capable of understanding the designation and

5

of distinguishing the alleged trade secrets from information already known to persons in the field, the designation should, as a general rule, be considered adequate to permit discovery to commence." Advanced Modular, 132 Cal.App.4th at 836; see also Brescia, 172 Cal.App.4th at 146 (quoting Advanced Modular, 132 Cal.App.4th at 836).

Here, although Dr. Kelly and Mr. Berg disagree on the sufficiency of Plaintiff's First Amended Identification of Trade Secrets, the Court concludes that they are both credible experts for this purpose. Because Mr. Berg has stated that he is capable of understanding Plaintiff's trade secret identification and discerning what Plaintiff is claiming to be trade secret information, and has provided a particularized chart supporting his opinion, the Court follows the general rule and exercises its broad discretion to conclude that Plaintiff's First Amended Identification of Trade Secrets satisfies the reasonable particularity requirement of Section 2019.210. Therefore, Defendant's Motion for a Protective Order is denied and discovery shall commence. As discussed at the hearing, Defendants shall begin a rolling document production in response to pending discovery requests no later than March 31, 2010. Also, the parties are encouraged to meet and confer in an effort to agree on phasing for discovery.

**IT IS SO ORDERED.**

Dated: March 17, 2010

ELIZABETH D. LAPORTE
United States Magistrate Judge