KARINEH KHACHATOURIAN (SBN 202634)
Email: karineh.khachatourian@klgates.com
BRYAN J. SINCLAIR (SBN 205885)
Email: bryan.sinclair@klgates.com
MICHAEL R. HAVEN (SBN 208721)
Email: mike.haven@klgates.com
**K&L GATES LLP**
630 Hansen Way
Palo Alto, CA 94304
Telephone: (650) 798-6700
Facsimile: (650) 798-6701

Attorneys for Plaintiff / Counter-defendant,
PHOENIX TECHNOLOGIES LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| PHOENIX TECHNOLOGIES LTD., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DEVICEVM, a Delaware corporation, and BENEDICT CHONG, an individual,<br><br>Defendants. | Case No. 4:09-cv-04697-CW (EDL)<br><br>**SECOND AMENDED COMPLAINT FOR (1) PATENT INFRINGEMENT; (2) BREACH OF CONTRACT; (3) INTERFERENCE WITH CONTRACT; (4) TRADE SECRET MISAPPROPRIATION; (5) UNFAIR BUSINESS PRACTICES; AND (6) CONVERSION**<br><br>**JURY TRIAL DEMAND** |
| DEVICEVM, INC., a Delaware corporation,<br><br>Counter-claimant,<br><br>v.<br><br>PHOENIX TECHNOLOGIES LTD., a Delaware corporation,<br><br>Counterclaim-defendant. | Judge: Honorable Claudia Wilken<br>Room: Courtroom 2, 4th Floor<br><br>Complaint Filed: July 17, 2009<br>Trial Date: TBD |

PLAINTIFF'S SECOND AMENDED COMPLAINT         Case No. 4:09-cv-04697-CW (EDL)

Plaintiff Phoenix Technologies Ltd. ("Phoenix"), for its Second Amended Complaint against Defendants DeviceVM, Inc. ("DeviceVM") and Benedict Chong ("Chong") (collectively, "Defendants"), alleges as follows:

## THE PARTIES

1. Phoenix Technologies Ltd. is a Delaware corporation with its principal place of business in Milpitas, California.

2. Founded in 1979, Phoenix designs, develops and supports system software and related applications and services for personal computers ("PCs") and other computing devices. Phoenix's products support and enable the compatibility, performance, connectivity, security and management of the various components and technologies used in such devices. Phoenix established industry leadership and effectively created the PC clone industry with its original BIOS product for Compaq in 1983.

3. Phoenix sells its products primarily to computer and component device manufacturers. The company also provides training, consulting, maintenance and engineering services to its customers.

4. DeviceVM is a Delaware corporation with its principal place of business in San Jose, California. On information and belief, DeviceVM is a privately held software company headquartered in Silicon Valley with offices in Taiwan and China. On information and belief, DeviceVM was founded in 2006 and is funded by various venture capital firms and private investors based in China and the United States.

5. On information and belief, DeviceVM markets, sells, distributes and offers for sale a product named Splashtop®, which it alleges is an instant-on pre-boot environment, developed by DeviceVM, that allows a user to rapidly access the Web and key applications without the need to boot the main operating system.

6. Phoenix is informed and believes, and based thereon alleges that Chong, an individual, works and resides in San Jose, California. Chong is a former Phoenix employee who, Phoenix is informed and believes, and based thereon alleges, has worked for and is still employed by DeviceVM.

- 1 -
PLAINTIFF'S SECOND AMENDED COMPLAINT        Case No. 4:09-cv-04697-CW (EDL)

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Phoenix's claims pursuant to 28 U.S.C. § 1331.

8. Venue of this action is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b).

## BACKGROUND ALLEGATIONS

9. Chong worked as an employee of Phoenix for eight years, from approximately November 1996 until November 2004. During his tenure at Phoenix, he worked as a "Principal Software Engineer" and/or "Team Lead." Generally speaking, these titles describe a senior level engineer who serves as the technical leader of a specific team, manages a group of engineers working on that team, and serves a role as an individual contributor in the development of a product line.

10. In 1996, Phoenix hired Chong to play a significant role in Phoenix's engineering group responsible for Phoenix's development of core systems technology.

11. Since Chong had access to Phoenix's most sensitive information, on or about November 1996, Phoenix presented and Chong signed an Employee Inventions and Proprietary Information Agreement (the "Agreement") as a condition of Chong's employment by Phoenix. A true and correct copy of the Agreement is attached hereto as Exhibit 1, and is incorporated herein by reference.

12. The Agreement is valid and fully enforceable against Chong.

13. Pursuant to Paragraph 3 of the Agreement, Chong agreed that all Innovations that: (a) are not developed entirely on Employee's own time; (b) are developed using equipment, supplies, facilities, confidential and proprietary information or trade secrets of Phoenix; (c) result from work performed by Employee for Phoenix; or (d) relate at the time of conception or reduction to practice to the business or the actual or demonstrably anticipated research or development of Phoenix, will be the sole and exclusive property of Phoenix. Chong also agreed to assign to Phoenix any rights that he may have in any such Innovations and in any associated patents, patent applications, copyrights, trade secret rights, mask work rights, rights of priority and other

intellectual property rights.

14. Pursuant to Paragraph 4 of the Agreement, Chong agreed to assist Phoenix in every proper way to obtain for Phoenix and enforce patents, copyrights, mask work rights and other legal protections for Innovations belonging to Phoenix in any and all countries.

15. Pursuant to Paragraph 5 of the Agreement, Chong agreed to irrevocably transfer and assign to Phoenix, and forever waive and agree never to assert, any right to claim authorship or be identified as the author of any Innovation, to object to any modification of, or other action in relation to, any Innovation, or any similar right, existing under judicial or statutory law of any country in the world, or under any treaty.

16. Pursuant to Paragraph 6 of the Agreement, Chong acknowledged that his employment with Phoenix created a relationship of confidence and trust with respect to any information of a confidential and proprietary or secret nature that was disclosed to him by Phoenix, or that he learned in the course of employment by Phoenix and that related to the business, products, supplier, customers, research or development of Phoenix and its products. Such Proprietary Information includes but is not limited to Innovations, marketing plans, product plans, business strategies, financial information, forecasts, personnel information, customer lists and any other nonpublic technical or business information that Employee knows or has reason to know Phoenix would like to treat as confidential for any purpose, such as product development, maintaining a competitive advantage, or avoiding undesirable publicity (hereinafter "Proprietary Information").

17. Pursuant to Paragraph 7 of the Agreement, Chong agreed at all times, both during and after his employment, to keep all such Proprietary Information in confidence and trust, and agreed not to use or disclose any such Proprietary Information without the written consent of Phoenix, except as may be necessary to perform his duties as an employee of Phoenix and for Phoenix's benefit.

18. In 2000, Phoenix began developing its FirstWare product line. Phoenix formed an internal team that worked on the development of Phoenix's own Operating System for all related products. The team was called the "Firmware OS Team" that was referred to internally as the "FOS Team." The FOS Team worked on the FirstWare product line and Chong was a member of the FOS

1  Team. Chong was also a member of Phoenix's "Appliance Platform Engineering Group" between
2  approximately 2002 and the date of his departure from Phoenix.

3      19.    In 2001, Phoenix announced the availability of FirstView Connect product line. This
4  product contained, *inter alia*, technology that was an "instant on" web browser appliance that
5  provided instant-on Internet access and browsing capability for Internet TV, Internet Video Players,
6  interactive screen phones, game consoles, direct from memory set top boxes and handheld
7  appliances.

8      20.    Chong was involved in various aspects of the development of FirstView Connect and
9  served as Team Lead for the product development efforts.

10      21.    During 2002, while Chong was still a member of the FOS Team, Phoenix developed
11  another product called FirstSight which was a graphic user interface used to access applications
12  residing on the hard disk and could be incorporated into the BIOS.

13      22.    In addition, in the Fall of 2002, Phoenix's development team began working on the
14  Tripoli project which was focused on the development of a product called "cME Console." The
15  Tripoli project involved a Linux-based operating system environment upon which other applications
16  could run. The cME Console product could run applications or boot stand-alone Protected Service
17  Areas ("PSAs").

18      23.    In 2003, Chong, along with two other Phoenix engineers, conceived of a new boot
19  loader methodology which stored the bootloader in the BIOS and used the BIOS as the operating
20  system bootloader. The Phoenix project incorporating this methodology was called Raptor. The
21  invention was disclosed in United States Patent Application No. 10/842,780 entitled "Media Boot
22  Loader" (the "'780 Application"), filed on May 11, 2004, which names Chong as the first named
23  inventor.

24      24.    Likewise, during 2003, other members of the Phoenix FOS Team were continuing to
25  develop the technology to be utilized as the platform for the Console product referenced in
26  Paragraph 20. In connection with their development, on September 24, 2004 Phoenix prepared and
27  filed United States Patent Application No. 10/950,199 entitled "Operating System Transfer and
28  Launch Without Performing POST" (the "'199 Application"). The inventions in the '199

1  Application could be utilized to rapidly boot a second OS from a first OS without going through
2  Power on Self Text ("POST").

3      25.    In connection with its ongoing FirstWare product development, Phoenix publicly
4  introduced its FirstWare Assistant product in September of 2003. FirstWare Assistant provided
5  instant-on access to personal information management (PIM) data from Microsoft Outlook without
6  needing to first launch the Windows operating system. The product utilized a Phoenix customized
7  Windows NT bootloader that gave users a "hot key" option during boot to either load FirstWare
8  Assistant or the default operating system. Chong was the author for all revisions of the Product
9  Requirements Document ("PRD") for FirstWare Assistant 1.0.0.1.

10      26.    In addition to the PRD, Chong also authored at least the following documents: (a)
11  PRD for FirstWare Assistant 1.1; (b) PRD for FirstWare Assistant Challenger (i.e., FirstWare
12  Assistant 2.x); (c) Functional Specification for FirstWare Assistant Challenger Release 1B,
13  FirstWare Assistant Challenger Release 2 and FirstWare Assistant 2.0.1; (d) the Functional
14  Specification for FirstWare Assistant Challenger Release 2; (e) a detailed technical disclosure in a
15  FirstWare Assistant PowerPoint; and (f) other related technical documents.

16      27.    As Chong's involvement with the FirstWare Assistant was so substantial, he was
17  made Team Lead for the engineers working on the product line. In that capacity, he oversaw the
18  FirstWare Assistant product development efforts and worked closely with engineers working in
19  tandem on related Phoenix development projects directed at running various appliances in an
20  instant-on setting and Phoenix's "Always On" technology.

21      28.    In connection with his extensive involvement with the various Phoenix projects and
22  products identified above, Chong developed, had access to, and had substantial involvement with
23  Phoenix Proprietary Information during his eight years of employment by Phoenix. Chong's last
24  day as a Phoenix engineer was November 19, 2004.

25      29.    On information and belief, DeviceVM hired Chong as a Director, Program
26  Management, in January 2007.

27      30.    Not long after Chong joined DeviceVM, it filed United States Provisional Patent
28  Application No. 60/890,121 on February 15, 2007 entitled "Instant-On Appliances" (the "'121

Provisional Application"). Chong is a named inventor on the '121 Provisional Application.

31. On July 2, 2007, DeviceVM filed United States Patent Application No. 11/772,700 entitled "Method and Apparatus for Virtualization of Appliances" (the "'700 Application"). Chong is a named inventor on the '700 Application. The '700 Application claimed priority to, *inter alia,* the '121 Provisional Application and ultimately issued as U.S. Patent No. 7,441,113 (the "'113 Patent") on October 21, 2008. Upon information and belief, Device VM's Spashtop® product practices the inventions claimed in the '113 Patent.

32. On July 3, 2007, DeviceVM filed international application No. PCT/US07/72778 entitled "Method and Apparatus for Virtualization of Appliances" (the "PCT Application"). The PCT Application claims priority to, *inter alia,* the '121 Provisional Application and the '700 Application (which ultimately issued as the '113 Patent). Chong is a named inventor on the PCT Application.

33. On August 1, 2008, DeviceVM filed United States Application No. 12/184,374 entitled "Integration Model for Instant-On Environment" (the "'374 Application"). Chong is a named inventor on the '374 Application.

34. On August 28, 2008, DeviceVM filed United States Application No. 12/200,758 entitled "Method and Apparatus for Virtualization of Appliances" (the "'758 Application") as a continuation of the '113 Patent. Chong is a named inventor on the '758 Application.

35. Finally, on September 26, 2008, DeviceVM filed United States Application No. 12/239,701 entitled "Installation of a Virtualization Environment" (the '701 Application") as a continuation-in-part of the '758 Application. Chong is a first named inventor on the '701 Application. The '121 Provisional Application, the '374 Application, the '700 Application, the '758 Application, the '701 Application, and the PCT Application are collectively referred to as the "DeviceVM Patent Applications."

36. On information and belief, Chong has disclosed Phoenix Proprietary Information to DeviceVM. DeviceVM has included Phoenix Proprietary Information in the DeviceVM Patent Applications and such information is contained in the '113 Patent. Upon information and belief, DeviceVM has incorporated Phoenix Proprietary Information in its Spashtop® product and this

product contains inventions misappropriated from Phoenix through Chong.

37. On information and belief, based in part on the misappropriated Phoenix Proprietary Information, DeviceVM has misled Phoenix's potential customers and the public about the true nature of its business and the purported independent development of its Splashtop® product.

38. Phoenix only became aware of DeviceVM's and Chong's unlawful activities in June 2009. In addition, Phoenix recently discovered evidence of the use of an anti-forensic wiping tool on the Phoenix computer that was assigned to Chong while employed at Phoenix. Upon information and belief, Chong used such a tool to conceal information from Phoenix or destroy evidence of misappropriation of Phoenix Proprietary Information.

39. Phoenix is the assignee of United States Patent No.6,519,659 titled "Method and System for Transferring An Application Program from System Firmware to A Storage Device" (the "'659 Patent").

40. The '659 Patent duly issued on February 11, 2003 and Phoenix owns all right, title an interest in the '659 Patent. A true and correct copy of the '659 Patent is attached to the Second Amended Complaint as Exhibit 2.

### FIRST CAUSE OF ACTION

### INFRINGEMENT OF THE '659 PATENT AGAINST DEVICEVM

41. Phoenix incorporates by reference the above paragraphs as though set forth fully herein.

42. DeviceVM has and continues to directly infringe, contributorily infringe, and/or induce the infringement of the '659 Patent by making, using, offering to sell, licensing, and/or selling software and computer systems that are covered by the claims of the inventions contained in the '659 Patent. Specifically, DeviceVM's SplashTop® product infringes one or more of the claims of the '659 Patent.

43. Phoenix has suffered damages as the result of DeviceVM's infringement of the '659 Patent.

44. DeviceVM will continue to infringe, induce others to infringe, and/or engage in contributory infringement of the '659 Patent unless enjoined by the Court.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT AGAINST CHONG

45. Phoenix incorporates by reference the above paragraphs as though set forth fully herein.

46. As a condition of his employment, Chong signed the Agreement with Phoenix, Phoenix has performed every promise and condition required to be performed by it pursuant to the Agreement except any which were or would be excused or prevented by the breaches of Chong as set forth herein.

47. On information and belief, Chong breached his obligations to Phoenix under the Agreement by, among other things, engaging in the following activities: (a) misappropriating Proprietary Information of Phoenix and using this information to develop products for DeviceVM and submit in DeviceVM Patent Applications; (b) failing to keep Proprietary Information of Phoenix in trust and confidence; (c) using and disclosing Phoenix's Proprietary Information on behalf of DeviceVM without the written consent of Phoenix; (d) failing to return and deliver Phoenix's Proprietary Information upon termination of employment with Phoenix; and (e) failing to inform the PTO and other parties that the specific inventions that were conceived while Chong was employed at Phoenix, and which are the subject of this Action, had already been assigned to Phoenix or were otherwise owned by Phoenix.

48. By reason of the foregoing, Phoenix has been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION

## INTERFERENCE WITH CONTRACT AGAINST DEVICEVM

49. Phoenix incorporates by reference the above paragraphs as though set forth fully herein.

50. At all times referenced herein the Agreement was and is a valid contract between Phoenix and Chong.

51. On information and belief, DeviceVM either knew or should have known of the existence of the Agreement between Phoenix and Chong.

52. On information and belief, DeviceVM induced Chong to breach the Agreement.

53. By reason of DeviceVM's inducement, Phoenix has been damaged by the failure of Chong to perform and complete his obligations in accordance with the terms of the Agreement, in a sum to be proven at trial.

54. DeviceVM's conduct has been willful, oppressive, and malicious, and done with the intent to injure Phoenix and deprive Phoenix of its property and legal rights. Phoenix is therefore entitled to exemplary and punitive damages in an amount sufficient to deter future wrongful conduct.

## FOURTH CAUSE OF ACTION

### TRADE SECRET MISAPPROPRIATION AGAINST ALL DEFENDANTS

55. Phoenix incorporates by reference the above paragraphs as though set forth fully herein.

56. Upon information and belief, Defendants have misappropriated, and are using Phoenix's trade secret information related to Phoenix's technology and business, without Phoenix's consent, and in order to compete directly with Phoenix.

57. Defendants' conduct violates California's Uniform Trade Secrets Act.

58. Phoenix has been irreparably harmed.

59. Phoenix has suffered damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES AGAINST ALL DEFENDANTS

60. Phoenix incorporates by reference the above paragraphs as though set forth fully herein.

61. In the course of the wrongful conduct alleged herein, the Defendants, and each of them, engaged in unfair and unlawful business practices in violation of the common law and Sections 17200 et seq. of the California Business and Professions Code including, but not limited to, the misappropriation of confidential and Proprietary Information of Phoenix.

62. The continuing activities of the Defendants in developing and exploiting the confidential and Proprietary Information stolen from Phoenix constitute an on-going pattern and

practice of unfair competition.

63. The continuing activities of Defendants to mislead Phoenix's customers and the public by representing that Splashtop® was independently developed through its own intellectual property constitute an on-going pattern and practice of unfair competition.

64. By reason of this activity, Phoenix has been harmed in an amount to be proven at trial, and the public has been misled about the true nature of DeviceVM's business. Injunctive relief is necessary to prevent further irreparable injury to Phoenix, and to put an immediate halt to DeviceVM and Chong's on-going practice and pattern of wrongful conduct. DeviceVM has obtained benefits from its unlawful activity, for which DeviceVM is required to disgorge or to make restitution.

## SIXTH CAUSE OF ACTION

### CONVERSION

65. Phoenix incorporates by reference the above paragraphs as though set forth fully herein.

66. Phoenix is the owner of the confidential and Proprietary Information misappropriated by DeviceVM and Chong as found in certain DeviceVM Patent Applications and/or the '113 Patent. Under the Agreement and Chong's legal obligations to Phoenix, this information is exclusively owned by Phoenix. Phoenix is the owner of this information and has the exclusive right to possession of it.

67. DeviceVM and Chong converted Phoenix's property by a series of wrongful acts. On information and belief, Phoenix's property was converted by: (a) misappropriating the confidential and Proprietary Information containing Phoenix's inventions; (b) taking the confidential and Proprietary Information and the inventions contained therein to DeviceVM; and (c) utilizing the confidential and Proprietary Information and the inventions contained therein to prosecute patent applications for DeviceVM and to develop technology based on the information and inventions.

68. By converting the confidential and Proprietary Information and inventions that are exclusively owned by Phoenix, DeviceVM and Chong have caused great damage to Phoenix, in an

1 amount to be proven at trial.

2     69. DeviceVM's conduct has been willful, oppressive, and malicious, and done with the intent to injure Phoenix and deprive Phoenix of its property and legal rights. Phoenix is therefore entitled to exemplary and punitive damages in an amount sufficient to deter future wrongful conduct.

## PRAYER FOR RELIEF

Wherefore, Phoenix prays judgment against Defendants as follows:

A. For compensatory damages against Defendants to be proven at trial;

B. For disgorgement and restitution from Defendants to be proven at trial;

C. An award to Phoenix of punitive damages in a sum according to proof;

D. An award to Phoenix of its costs, expenses and reasonable attorneys' fees incurred in bringing and prosecuting this action, pursuant to the Agreement;

E. An order directing the Defendants to correct the records of the PTO to reflect that all intellectual property rights to the inventions conceived by Chong are owned by Phoenix, including but not limited to all rights to all DeviceVM Patent Applications or issued patents arising from Phoenix's confidential or Proprietary Information;

F. A declaration that Phoenix was assigned all rights to the inventions conceived by Chong while employed at Phoenix under the terms of the Agreement, and therefore that these inventions are exclusively owned by Phoenix;

G. Preliminarily and permanently enjoin the Defendants from:

(1) disclosing, obtaining or using, or attempting to disclose, obtain or use any of Phoenix's confidential or Proprietary Information misappropriated from Phoenix,

(2) disseminating or destroying any documents, material or things now in their possession that originated at Phoenix, that belong to Phoenix, or that embody or are derived from Phoenix's confidential or Proprietary Information, or that are otherwise relevant to the subject matter of this lawsuit,

(3) manufacturing, selling, offering to sell, licensing, creating source code for, marketing, or advertising, any product that incorporates or performs any of the inventions

misappropriated from Phoenix, or that is derived from any inventions or confidential or Proprietary Information misappropriated by the Defendants.

    H.    An order imposing a constructive trust for the benefit of Phoenix over:

        (1)    the inventions claimed and/or disclosed in the Patents, and all DeviceVM products based on and/or incorporating those inventions;

        (2)    all profits, royalties, and other benefits resulting from the exploitation of the inventions claimed and/or disclosed in the Patents, including all profits and royalties resulting from the manufacture, sale, distribution, and marketing of each version of DeviceVM's products,

        (3)    all software or other products that incorporate the inventions conceived by Chong while employed at Phoenix, and any products derived from DeviceVM's illegal activities;

        (4)    any United States or foreign patents or patent applications that claim priority to the '113 Patent and/or that are supported by the disclosures in the DeviceVM Patent Applications,

        (5)    the confidential and/or Proprietary Information that was misappropriated from Phoenix by DeviceVM and Chong,

        (6)    any profits, revenues, or other benefits obtained by the Defendants as a result of their utilization of the inventions contained in the '113 Patent or DeviceVM Patent Applications; and

    I.    That Phoenix be awarded compensatory and special damages for the infringement of the '659 Patent in an amount to be determined at trial;

    J.    That DeviceVM be preliminarily and permanently enjoined from infringing, inducing others to infringe, and/or contributorily infringing the '659 Patent;

    K.    That the Court declare this an exceptional case under 35 U.S.C. § 285 and award Phoenix its attorneys' fees and costs incurred in connection with this action;

L.  For such other and further relief as may be awarded at the trial of this matter according to proof.

K&L GATES LLP

Dated:  March 24, 2010          By:   /s/ Bryan J. Sinclair
                                      BRYAN J. SINCLAIR

                                Attorneys for Plaintiff / Counter-defendant,
                                PHOENIX TECHNOLOGIES, LTD.

- 13 -
PLAINTIFF'S SECOND AMENDED COMPLAINT          Case No. 4:09-cv-04697-CW (EDL)

**DEMAND FOR JURY TRIAL**

Phoenix demands a trial by jury of all issues so triable under the law.

K&L GATES LLP

Dated: March 24, 2010        By:   /s/ Bryan J. Sinclair
                                   BRYAN J. SINCLAIR

                                   Attorneys for Plaintiff / Counter-defendant,
                                   PHOENIX TECHNOLOGIES, LTD.

PL-36014 v2